BERNARD M. AXELROD et al., as Trustees under the Will of Charles Axelrod, Deceased, Appellants, v ROGER STARR, as Administrator of the Housing and Development Admininstration of New York City, et al., Respondents.

First Department, May 13, 1976

*Wynne B. Stern, Jr.,* of counsel *(Fellner & Rovins,* attorneys), for appellants.

*Bernard Burstein* of counsel *(L. Kevin Sheridan* with him on the brief; *W. Bernard Richland, Corporation Counsel),* for Roger Starr, respondent.

*Joseph B. Goldman* for Conciliation and Appeals Board, respondent.

SILVERMAN, J. This is an action for a declaratory judgment declaring that certain properties owned by plaintiffs are not subject to the New York City Rent Stabilization Law (Administrative Code of City of New York, § YY51-1.0 *et seq.).* Special Term denied plaintiffs' motion for summary judgment and entered judgment declaring the plaintiffs' premises to be subject to the guidelines established by the Rent Guidelines Board created pursuant to section YY51-5.0. Plaintiffs appeal from that order.

Plaintiffs claim that their properties are exempt from the provisions of the Rent Stabilization Law because they are now "financed by loans from a public agency." Defendants city agencies contend that at least until July 1, 1976 there is no exemption for properties financed by loans from a public agency and that in any event, plaintiffs' properties are not properties financed by a public agency within the meaning of the statute. In my view we need only reach the first of these two contentions of the city agencies.

The basic provisions of the governing statute so far as here relevant are:

"§ YY51-3.0 Application.

"This law shall apply to

"a. Class A multiple dwellings not owned as a cooperative or as a condominium, containing six or more dwelling units which:

"(1) were completed after February first, nineteen hundred

forty-seven, except dwelling units (a) owned or leased by, or financed by loans from, a public agency or public benefit corporation, (b) * * * (e) * * * and

"b. other housing accommodations made subject to this law pursuant to the emergency tenant protection act of nineteen seventy-four."

Plaintiffs contend that their properties are exempt by reason of the exception contained in clause (a) of paragraph (1) of subdivision a quoted above; and that the provision of subdivision b making the law applicable to "other housing accommodations made subject to this law pursuant to the emergency tenant protection act of nineteen seventy-four" refers only to "other" housing accommodations, other than those exempted by subdivision a. Defendants city agencies contend that subdivision b makes the law applicable to "other," in the sense of "additional," accommodations, additional to those covered by subdivision a and specifically including those exempted from subdivision a.

I think the defendants' interpretation is correct.

To begin with, the defendants' interpretation, on the face of the statute, appears to me to be at least as natural a reading of the statute as the plaintiffs'. And defendants' interpretation is I think supported by legislative history and by other provisions of the statute.

The quoted statute was enacted by chapter 576 of the Laws of 1974 as part of a program of amending various rent control statutes, and eliminating vacancy decontrol in certain municipalities. Subdivision a of section YY51-3.0 as enacted by chapter 576 was merely a continuation and renumbering of the subdivisions of the former section YY51-3.0 of the Administrative Code as enacted by the Local Laws of City of New York (L 1969, No. 16). To that pre-existing statute, chapter 576 of the Laws of 1974 added subdivision b quoted above. Chapter 576 also enacted a new statute called the Emergency Tenant Protection Act of 1974. Thus there were created two layers of authority for the regulation of premises under the Rent Stabilization Law, i.e. (a) the pre-existing statute as renumbered and continued as subdivision a of section YY51-3.0; and (b) the Emergency Tenant Protection Act under subdivision b of section YY51-3.0.

The Emergency Tenant Protection Act extended a form of rent regulation to the City of New York and the cities, towns and villages located in the Counties of Nassau, Westchester

and Rockland. But the Emergency Tenant Protection Act is a form of local option legislation; it becomes effective in any particular city, town or village, including the City of New York, only on determination by the local legislative body of the existence of the defined public emergency and of the need of regulating and controlling residential rents within such municipality (Emergency Tenant Protection Act, § 3). Thus the Emergency Tenant Protection Act would be applicable to the City of New York (as to any other municipality) only if the city legislative body made the declaration of emergency required by section 3. By resolution apparently dated June 20, 1974, the New York City Council declared the emergency pursuant to the Emergency Tenant Protection Act.

It is apparent that both the Emergency Tenant Protection Act and the New York City Council resolution intended to extend rent regulation beyond that which existed immediately before the enactment of the Emergency Tenant Protection Act.

It is further apparent that one of the precise areas to which both the State Legislature and the City Council intended to extend the Rent Stabilization Law was to premises theretofore exempted from the Rent Stabilization Law. Thus the resolution of emergency required by section 3 of the Emergency Tenant Protection Act declares the existence of a public emergency requiring the regulation of the residential rents for classes of housing accommodations "heretofore destabilized; heretofore or hereafter decontrolled, *exempt,* not subject to control, or *exempted from* regulation and control under the provisions of * * * the New York city rent stabilization law of nineteen hundred sixty-nine." (Italics mine.) The New York City Council resolution incorporates this language verbatim. This seems to me to be a clear declaration that both the State Legislature and the City Council intended that to the extent that the Emergency Tenant Protection Act applied, it should supersede pre-existing exemptions.

The Emergency Tenant Protection Act of course contained its own exemptions, and reaffirmations of authority. Thus section 5 of the Emergency Tenant Protection Act provides:

"a. A declaration of emergency may be made pursuant to section three as to all or any class or classes of housing accommodations in a municipality, except: * * *

"(2) housing accommodations owned or operated by the United States, the state of New York, any political subdivi-

sion, agency or instrumentality thereof, any municipality or any public housing authority".

Significantly this exception does not include any exceptions for properties financed by loans from a public agency. There is no contention that plaintiffs' properties are owned or operated by the United States or by any public agency. This seems to be a rather clear indication that the Emergency Tenant Protection Act intended to authorize municipalities and particularly New York City to extend the provisions of the Rent Stabilization Law to housing accommodations financed by loans from public agencies.

Plaintiffs raise the question as to why the Legislature should with one hand grant an exemption for properties financed by loans from public agencies by the enactment of subdivision a of section YY51-3.0 and simultaneously with the other hand take away that exemption by the enactment of subdivision b. To this I think there are several answers: In the first place, the Legislature was not really enacting a new subdivision a; it was merely continuing the old provisions of section YY51-3.0 which had existed since 1969, and renumbering those provisions to fit into the numbering scheme of the new statute. In the second place, subdivision b applied only to the extent that the Emergency Tenant Protection Act applied in a city, and this depended on whether the City Council would enact the declaration of emergency which the City Council was free to do or not to do. If the City Council did not enact the declaration of emergency, then subdivision b of the Emergency Tenant Protection Act would not apply in the City of New York and subdivision a with its exemptions would apply. Further, the Emergency Tenant Protection Act is by its terms temporary legislation to expire July 1, 1976 (L 1974, ch 576, § 17).

Finally, plaintiffs refer to the provision of section 15 of chapter 576: "15. Construction. All rights, remedies and obligations heretofore created pursuant to the New York city rent stabilization law, including those contained in the code of the rent stabilization association of New York city, approved by the New York city housing and development administration, and the orders of the conciliation and appeals board, shall inure to the benefit of all owners and tenants of units subject to this chapter." Plaintiffs suggest that this means that any exemptions theretofore existing shall continue in effect. While not a model of clarity, the section does qualify its preservation

of pre-existing rights, remedies and obligations by the phrase "subject to this chapter."

I think that housing accommodations financed by loans from public agencies are subject to the Rent Stabilization Law and the rent guidelines established pursuant thereto during the period that the Emergency Tenant Protection Act is applicable within the City of New York. It is thus unnecessary to consider whether in fact plaintiffs' properties are so financed within the meaning of the statute. ·

The order and judgment of the Supreme Court, New York County (HELMAN, J.) entered November 12, 1975, should be affirmed with costs.

LANE, J. (dissenting). The appellants are owners or lessees of Class A multiple dwellings constructed after February 1, 1947. Initially, the mortgagee on each of the premises was a bank, and the mortgages were insured by the Secretary of Housing and Urban Development, the Federal Housing Administration, or the Federal National Mortgage Association. In each instance, the mortgagees subsequently assigned these mortgages to a public agency.*

The enactment of the Rent Stabilization Law in 1969 was intended by the New York City Council to prevent "unwarranted and abnormal increases in rents" in housing accommodations not then subject to rent control (either because they were built after 1947 or were decontrolled for various other reasons), by controlling residential rents and evictions in those premises. However, the legislative findings articulated as a part of the Rent Stabilization Law specifically stated that the transition from governmental regulation to a normal market of free bargaining between landlord and tenant was still the objective of both State and city policy (Admininstrative Code, § YY51-1.0).

Subsequently, in 1971, the Vacancy Decontrol Law was enacted by the State Legislature (L 1971, ch 371), which allowed all apartments vacant effective June 30, 1971 to be rented on a "free market" basis. In 1974, the Emergency Tenant Protection Act retracted a part of this "free market" interaction between landlord and tenant. The Emergency Tenant Protection Act was a reaction to alleged renewed

---

* The agencies involved were the Secretary of Housing and Urban Development, the Government National Mortgage Association, or the Federal National Mortgage Association.

excesses by landlords in their rental programs and was intended as local option legislation.

Under statutory schemes of both the Rent Stabilization Law and the Emergency Tenant Protection Act, certain types of residential accommodations were exempted from control and subject to the "free market" rental approach. For example, the Rent Stabilization Law provided that:

"This law shall apply to Class A multiple dwellings not owned as a co-operative or as a condominium, containing six or more dwelling units which:

"a. were completed after February first, nineteen hundred forty-seven, except dwelling units (1) owned or leased by, or financed by loans from, a public agency or public benefit corporation". (Administrative Code, § YY51-3.0 [Local Law No. 16, May 6, 1969].)

In 1974, the passage of the Emergency Tenant Protection Act (L 1974, ch 576) provided for retention of section YY51-3.0 of the Administrative Code, as above quoted; however, the subdivision designations in the section were changed and the Rent Stabilization statute was also applied to: "other housing accommodations made subject to this law pursuant to the emergency tenant protection act of nineteen seventy-four." (Administrative Code § YY51-3.0, subd b.)

The Emergency Tenant Protection Act, in its delineation of housing accommodations subject to regulation, provided that:

"a. A declaration of emergency may be made * * * as to all or any class or classes of housing accommodations in a municipality, except:

\* \* \*

"(2) housing accommodations owned or operated by the United States, the state of New York, any political subdivision, agency or instrumentality thereof, any municipality or any public housing authority". (Emergency Tenant Protection Act, § 5.)

A reading of the two statutes above quoted reveals that the Rent Stabilization Law provides an exemption for housing accommodations financed by loans from a public agency while the Emergency Tenant Protection Act does not.

Noteworthy is the fact that housing accommodations such as condominiums, co-operatives and Class B dwellings are not specifically exempted by the Emergency Tenant Protection

Act but are exempted by the Rent Stabilization Law. Concededly they are still exempt from regulation, though not specifically exempted by the Emergency Tenant Protection Act.

At issue in the case at bar is whether or not the Rent Stabilization Law exemption still obtains with regard to accommodations financed by a public agency. If it does, it is urged by the owners and lessees, who are the petitioners in this proceeding, that they are entitled to this exemption.

Special Term found in favor of the defendants-respondents. I would reverse.

Chapter 576 of the Laws of 1974 contained therein both the amended version of section YY51-3.0 of the Administrative Code and the sections of the Emergency Tenant Protection Act.

Section 95 of the General Construction Law provides that: "The provisions of a law repealing a prior law, which are substantial re-enactments of provisions of the prior law, shall be construed as a continuation of such provisions of such prior law, modified or amended according to the language employed, and not as new enactments." Clearly, therefore, the Legislature by its re-enactment of section YY51-3.0 with the Emergency Tenant Protection Act intended the previous exemptions to remain in effect.

Furthermore, from the fact that other exemptions not mentioned in the Emergency Tenant Protection Act are still in force, it is patent that the Emergency Tenant Protection Act exemptions were not intended to be exhaustive with relation to a locality such as New York City, which already had rent control statutes in effect.

The Emergency Tenant Protection Act exemptions are still meaningful and not repetitive in those municipalities opting to adopt the Emergency Tenant Protection Act and having no prior protective statutory scheme as to rent controls.

Lastly, the Emergency Tenant Protection Act enactment itself specifically provided that: "All rights, remedies and obligations heretofore created pursuant to the New York city rent stabilization law, including those contained in the code of the rent stabilization association of New York city, approved by the New York city housing and development administration, and the orders of the conciliation and appeals board, shall inure to the benefit of all owners and tenants of units subject to this chapter." (L 1974, ch 576, § 15.)

I would therefore give effect to the exemptions contained in the Administrative Code (§ YY51-3.0, subd [a], par [1], cl [a]).

Remaining for resolution is whether the financing of the premises involved was obtained "by loans from a public agency". It is to be recalled that the mortgagees were originally banks whose interests were later assigned to the various public agencies involved. It is urged that the statute contemplated only direct financing by a public agency and not financing arising out of an assignment.

The statute, however, does not include the word "direct" and therefore we may only look to the fact that, at present, the buildings are indeed financed by loans (albeit via assignment) of a public agency.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County, entered November 12, 1975, denying plaintiffs' motion for summary judgment and declaring the premises to be subject to rent stabilization, should be reversed on the law and plaintiffs' motion for summary judgment should be granted, declaring the rights of the parties in a manner consistent with this opinion.

MARKEWICH, J. P., and BIRNS, J., concur with SILVERMAN, J.; MURPHY and LANE, JJ., dissent in an opinion by LANE, J.

Order and judgment (one paper), Supreme Court, New York County, entered on November 12, 1975, affirmed. Respondents shall recover of appellants $60 costs and disbursements of this appeal.

