EDWARD MINTON, as Attorney for DORIS KASKEL, Appellant, v BERNARD B. DOMB et al., Respondents.

First Department, June 27, 1978

## APPEARANCES OF COUNSEL

*Donald S. Snider* of counsel *(Edward Minton, pro se,* and *Gerald Levine* with him on the brief; *Finley, Kumble, Wagner, Heine & Underberg,* attorneys), for appellant.

*Howard Schechter* of counsel *(Schekter, Aber & Hecht, P. C.,* attorneys), for Laure E. Domb, respondent.

*Cullen S. McVoy* of counsel *(Ellis S. Franke,* attorney), for New York City Conciliation and Appeals Board, *amicus curiae.*

## OPINION OF THE COURT

EVANS, J.

This is a summary hold-over proceeding seeking recovery of a certain co-operative apartment in New York City. The building in question was converted to a co-operative under the Rent Stabilization Law of 1969, such conversion taking place in 1971. In July, 1972, one Alvin Schragis purchased the shares controlling the vacant apartment and was given a proprietary lease. Vacant until September, 1973, a three-year sublease for the apartment was granted to respondents. The sublease contained an option to purchase within six months of expiration of the term. Appellant Kaskel purchased the shares in December, 1974 and assumed the lease subject to the rights of the subtenants. The term of the sublease expired on September 30, 1976, and eviction proceedings were begun in October. Housing Court granted the petition and Appellate Term reversed, holding that tenants covered by the Emergency Tenant Protection Act of 1974 (ETPA) could be evicted only in accordance with the Rent Stabilization Law, that subtenants were likewise protected, and that therefore petitioner was obligated to offer respondents a renewal of the lease.

In 1969, when the New York City Council enacted the Rent Stabilization Law, it cited in its legislative findings "exactions of unjust, unreasonable and oppressive rents and rental agreements * * * profiteering, speculation and other disruptive practices" (Administrative Code of City of New York, § YY51-1.0) as the conditions which made such legislation necessary. The exaction of unconscionable profits at the expense of tenants was the malady which the law was to remedy, and exempted were those premises operated not for profit, i.e., co-operatives and condominiums. Section YY51-3.0 of the Administrative Code entitled "Application" prior to amendment in 1974 made lucid their exemption thusly: "This law shall apply to class A multiple dwellings not owned as a cooperative or as a condominium."

Respondents Domb contend that they are entitled to a renewal lease because of the operation of the Emergency Tenant Protection Act as it "restabilized" their apartment, and point to subdivision b of section YY51-3.0 "Application" as amended. The subdivision in question states that the law shall apply to "b other housing accommodations made subject to this law pursuant to the emergency tenant protection act of [1974]" whereas subdivision a specifically exempts co-operatives and condominiums. They now rely upon section 5 of the ETPA which stated that a declaration of emergency may be made as to all classes of housing with certain exceptions, and that co-operatives and condominiums are not excepted. Now, by way of a fuller explanation and understanding of respondent's contentions let us take a step backward to 1974. The effective date of chapter 576 of the Laws of 1974, which included the ETPA, was May 29, 1974. It stated that the existence of an emergency requiring restabilization of destabilized apartments was a matter for the legislative body of each city, town or village within the State to determine; that it would become effective in cities with a population of one million or more whenever the local legislative body of the city determines the existence of such emergency and legislates accordingly. The New York City Council conducted the mandated public hearing on June 17, 1974 and on June 20, 1974, the council passed a resolution restabilizing destabilized apartments effective July 1, 1974. Section YY51-3.0 now reads after the 1974 amendment that it shall apply to "a. Class A multiple dwellings not owned as a cooperative or as a condominium, containing six or more dwelling units", which further made clear the legislative intent to exempt co-operatives and condominiums (with certain exceptions) from the operation of the statute.

As further indicia of legislative intent, let us turn to the New York City Conciliation and Appeals Board *(Wyle v Prince,* Docket No. 008019, Opn No. 2926, at p 2) as follows:

"Had the Legislature intended that the RSL apply to buildings owned as a cooperative on July 1, 1974, Chapter 576 of the Laws of 1974 would have so provided. On the contrary, Subdivision 7 of such law specifically excludes jurisdiction of the Rent Stabilization Law over buildings owned as cooperatives.

"The Board finds that since the building was owned as a cooperative on July 1, 1974, the effective date in New York

City of Chapter 576 of the Laws of 1974, the subject apartments are not subject to the Rent Stabilization Law and the tenants herein, as well as other similarly situated tenants, are not entitled to renewal leases as provided thereunder. The tenants' complaint is therefore dismissed *(Adler v. Bonner Realty & Constr. Corp.,* N.Y.L.J. 6/24/74, p. 15, col. 1, Sup. Ct., Bx. Co., *Spiegel, J., Brown, Harris, Stevens, Inc. v. Menzel,* N.Y.L.J., 3/15/72, p. 17, col. 4, App. Term, 1st Dept.)."

■ Due to the unique nature and the function of the Conciliation and Appeals Board, it might be advisable to give more than ordinary weight to their opinion in matters of this nature. "Ordinarily, courts will defer to construction given statutes and regulations by the agencies responsible for their administration, if said construction is not irrational or unreasonable" *(Matter of Albano v Kirby,* 36 NY2d 526, 532).

In an effort to differentiate between this case and *Axelrod v Starr* (52 AD2d 232, affd 41 NY2d 942) and *Krauss v Perry* (53 AD2d 578) upon which respondents rely as controlling, we find that *Axelrod* holds that housing accommodations financed by loans from public agencies are subject to the New York City Rent Stabilization Law, and the rent guidelines established thereto, during the period that the Emergency Tenant Protection Act of 1974 is applicable within the City of New York. The case here differs from *Axelrod* in that the present housing accommodations were not financed by agency loans.

■ Housing accommodations such as condominiums, co-operatives and Class B dwellings are not specifically exempted by the ETPA but are exempted by the Rent Stabilization Law. Thus, they are still exempt from regulation, though not specifically exempted by the Emergency Tenant Protection Act. There is clearly then, no basis for concluding that this court's ruling in *Axelrod,* either expressly or impliedly applied to a building converted to co-operative ownership prior to enactment of the ETPA and the subsequent Resolution No. 276 of the City Council. Here the tenant came in after conversion and after the proprietary lease was effective and never achieved the status of tenant, but was rather, a subtenant or subleasor with an option to buy the property. Further, rent control is not readily adaptable to co-operative properties which have a nonprofit landlord and where maintenance charges, not rent, are established by actual expenses, a factor which is an income tax deduction as a proportionate share of real estate taxes and mortgage interest.

*Krauss v Perry (supra)* began as a consolidated eviction proceeding, the tenants contending that they were in a house converted to a co-operative and subject to the Rent Stabilization Law and entitled to renewal leases. The hearing officer agreed; however he could not reach the question of whether co-operatives were subject to regulation under the laws because no evidence of such conversion was presented. The case was sent back for a new trial to determine if the landlord was entitled to relief under section 61 of the Rent Stabilization Code. The evidence compelled a finding that there was a conventional landlord-tenant relationship. The court commented that the petitioner's assertion that the co-operative plan was valid and effective was a mere assertion with no basis in the record. While *Krauss* did involve the application of the ETPA to an alleged co-operative, the decision has no bearing on the question of the application of the ETPA to co-operatives due to the fact that the record could not support a finding of the existence of a co-operative owner. It would appear that condominiums and co-operatives are still exempt from regulation, although not exempted by the ETPA. Chapter 576 of the Laws of 1974 contain both the amended section YY51-3.0 of the Administrative Code and the sections of the ETPA. Further, section 95 of the General Construction Law provides that "The provisions of a law repealing a prior law, which are substantial re-enactments of provisions of the prior law, shall be construed as a continuation of such provisions of such prior law, modified or amended according to the language employed, and not as new enactments." The Legislature by its re-enactment of section YY51-3.0 with the ETPA apparently intended the previous exemption to remain in effect.

As was said in *Axelrod* (52 AD2d 232, 236, *supra):* "All rights, remedies and obligations heretofore created pursuant to the New York City rent stabilization law, including those contained in the code of the rent stabilization association of New York city, approved by the New York city housing and development administration, and the orders of the conciliation and appeals board, shall inure to the benefit of all owners and tenants of units subject to this chapter." (L 1974, ch 576, § 15.) This means that any exemptions theretofore existing shall continue in effect.

The City Council's Resolution No. 276 was enacted consistent with section 5 of the ETPA which required that "A declaration of emergency may be made pursuant to section

three as to all or any class or classes of housing accommodations in a municipality". The language used was calculated to conform to the language of the statute as much as possible and not to effect any changes in existing law. The Attorney-General's office of the State of New York issued an Advisory Opinion, dated December 2, 1974, stating: "The New York City Council resolution which was adopted to implement ETPA § 3 * * * did not expressly or otherwise purport to modify the clear and unmistakable intent to exempt cooperatives as set forth in subdivision a." (§ YY51-3.0).

Lastly, this court in *Wyle v Prince* (50 AD2d 538, *supra)* affirmed on the opinion of Justice HELMAN sitting in Special Term, Part I, New York County. *Wyle* is comparable to the instant case. Here too the conversion to a co-operative became effective prior to July 1, 1974, the date of ETPA's effective date as established by the New York City Council. The building having been a co-operative before July 1, 1974, was not "restabilized". In denying renewal leases, the court cited *Jacobus v Colgate* (271 NY 235, 240) that: "The general rule is that statutes are to be construed as prospective only * * * It takes a clear expression of the legislative purpose to justify a retroactive application". Therefore, it appears that the only guiding and controlling case in the determination of the issues at bar is *Wyle v Prince.*

Accordingly, order, Appellate Term, First Department, entered May 31, 1977, reversing a judgment of the Civil Court of the City of New York, entered November 24, 1976, should be reversed on the law without costs and the judgment of the Civil Court should be reinstated.

MARKEWICH, J. (concurring). In concurring in the opinion of EVANS, J., I rely upon the simple thesis stated by STEUER, J., in *Downing v Downing* (32 AD2d 350, 351): "Statutes should be read to make sense wherever possible". This is equally so of the council resolution here considered. The theme of the dissent might be stated as "a housing accommodation is a housing accommodation is a housing accommodation". This is akin to saying that an apple is an orange because both are species of fruit. Quite obviously, the inclusion of neither of the prior specifically stated exempt classes, co-operative and condominium, under rent control "makes sense" when the actual relationship between the parties is scrutinized. The dissent says that "[b]etween these two parties there is obviously not a co-operative-co-operator relationship but something much

closer to a conventional landlord-tenant relationship." Quite so, but this has nothing at all to do with the actual relationship here examined. The owner of the building—the co-op corporation—plays no role whatever in this relationship. The "landlord" of the demised premises is the co-operator, the proprietary lessee; the "tenant" is the co-operator's lessee. Such a relationship is certainly more akin to that existing between the owner of a single-family dwelling and the tenant of that dwelling than that which exists between the owner of a multiple dwelling and each of the several tenants therein. And this one-to-one relationship is not and never has been subject to rent control.

SILVERMAN, J. (dissenting). I would affirm the order of the Appellate Term.

The issue in this case is whether, in a co-operative apartment house, a sublessee of an apartment from a proprietary tenant is entitled to the benefits of the Rent Stabilization Law (RSL) as against petitioner, the proprietary tenant.

The governing statute is the RSL (Administrative Code of City of New York, § YY51-3.0) as amended by the Emergency Tenant Protection Act (ETPA) (L 1974, ch 576). The section reads in part as follows:

"§ YY51-3.0 Application.

"This law shall apply to

"a. Class A multiple dwellings not owned as a cooperative or as a condominium, containing six or more dwelling units which:

"(1) were completed after February first, nineteen hundred forty-seven, except dwelling units (a) owned or leased by, or financed by loans from, a public agency or public benefit corporation * * *

"b. other housing accommodations made subject to this law pursuant to the emergency tenant protection act of nineteen seventy-four."

It is the contention of petitioner that the present case falls within the exemption for multiple dwellings "owned as a cooperative or as a condominium" under subdivision a above.

I note, to begin with, that this is not a dispute between the proprietary corporation and the proprietary tenant but rather between a proprietary tenant and a sublessee who is in no sense a co-operator or the owner of a co-operative apartment. Between these two parties there is obviously not a co-opera-

tive-co-operator relationship but something much closer to a conventional landlord-tenant relationship. It makes no difference to the relationship between these parties whether the sublease is a sublease of an apartment in a co-operative building or in a conventional rental building. Passing that point the question remains whether the apparent exemption of co-operative multiple dwellings in subdivision a of section YY51-3.0 was removed on the implementation of subdivision b of section YY51-3.0 (by the adoption of the implementing resolution by the New York City Council).

In *Axelrod v Starr* (52 AD2d 232, affd on opn of this court and Special Term 41 NY2d 942), there was involved the question whether the exemption under subdivision a of dwelling units financed by loans of a public agency was removed by the implementation of subdivision b. This court said (p 234):

"Plaintiffs contend that their properties are exempt by reason of the exception contained in clause (a) of paragraph (1) of subdivision a quoted above; and that the provision of subdivision b making the law applicable to 'other housing accommodations made subject to this law pursuant to the emergency tenant protection act of nineteen seventy-four' refers only to 'other' housing accommodations, other than those exempted by subdivision a. Defendants city agencies contend that subdivision b makes the law applicable to 'other,' in the sense of 'additional,' accommodations, additional to those covered by subdivision a and specificially including those exempted from subdivision a.

"I think the defendants' interpretation is correct."

The opinion of the majority of this court stated the reasons for this conclusion and those reasons were presumably approved by the Court of Appeals as it affirmed on the opinion of this court and Special Term. In the circumstances, I think it is unnecessary to repeat those reasons but I refer to the discussion in the opinion in *Axelrod v Starr (supra)*. Those reasons were reasons of statutory analysis, legislative history and legislative policy. In our opinion we said (p 235):

"It is apparent that both the Emergency Tenant Protection Act and the New York City Council resolution intended to extend rent regulation beyond that which existed immediately before the enactment of the Emergency Tenant Protection Act. * * *

"This seems to me to be a clear declaration that both the State Legislature and the City Council intended that to the

extent that the Emergency Tenant Protection Act applied, it should supersede pre-existing exemptions."

The same analysis leads to the conclusion that the exemptions for co-operatives contained in subdivision a were removed on the implementation of subdivision b. As in *Axelrod v Starr (supra),* I note that the ETPA, which added subdivision b, contained its own list of exceptions from the broad grant of authority in subdivision b (ETPA, § 5), and significantly co-operative apartments are not among those exceptions.

It is suggested that it is inappropriate to apply RSL to the present situation because the proprietary tenant cannot control the services in the apartment house, or the maintenance, or other expenses that the proprietary tenant will have to meet. But neither can a tenant who sublets his apartment in a rental building control the services. And the landlords of rental buildings clearly subject to the RSL cannot control their expenses; they are subject to the vagaries of the market, notably labor costs and the costs of fuel. But that does not exempt them from the RSL; it merely gives them a right to make a claim for higher rent in appropriate circumstances.

Finally, this is not a case of a proprietary tenant who wishes to recover possession of the apartment for his own occupancy.

FEIN, J., concurs with EVANS, J.; MARKEWICH, J., concurs in an opinion; SILVERMAN, J. P., dissents in an opinion.

Order, Appellate Term, Supreme Court, First Department, entered on May 31, 1977, reversed, on the law, without costs and without disbursements, and the judgment of the Civil Court reinstated.