OPINION OF THE COURT
Paula J. Omansky, J.
In this declaratory judgment action to determine the legal status of a Mitchell-Lama project, plaintiffs, Norma T. Davis, Steven Smollens and Kathleen Fish, suing individually, and as officers of Waterside Tenants Association (WTA) for and on behalf of the residents of Waterside Plaza, move for a preliminary injunction, enjoining defendant New York State Division of Housing and Community Renewal (DHCR) from processing the application filed by codefendants Waterside Housing Company, Inc. (WHC), Waterside Redevelopment Company, L. P. (WRC), North Waterside Redevelopment Company, L. P. (NWRC), and Aquarius Management Corp. (Aquarius, collectively, the Waterside defendants).
The Waterside defendants cross-move, pursuant to CPLR 3211 (a) (4), to dismiss the amended complaint on the grounds that the court does not have subject matter jurisdiction and that there are prior administrative proceedings pending involving the same parties, the same premises, and the same issues raised in this declaratory judgment action.
STATUTORY SCHEME
The Mitchell-Lama program is designed to encourage the private development of low- and middle-income housing in areas where such affordable housing cannot readily be provided by the ordinary unaided operation of private enterprise (Private Housing Finance Law § 11). The Mitchell-Lama program encourages private investment in housing by offering to developers long-term, low-interest government mortgage loans, and real estate tax abatements. In addition to State and *854 City financing, Mitchell-Lama buildings are entitled to receive Federal interest subsidies which reduce the effective interest on governmental mortgages to 1%. In return for these financial benefits, developers agree to regulations severely limiting profits, rents, tenant selection, and the transfer of property (Private Housing Finance Law §§ 20-23, 28, 31, 36).
State-financed Mitchell-Lama projects are supervised by the DHCR and are governed by,the New York Codes, Rules and Regulations (9 NYCRR part 1700 et seq.). Buildings financed by loans issued by the City of New York (the City) are supervised by the Department of Housing Preservation and Development (HPD) (Private Housing Finance Law § 2 [15]) and are governed by the Rules of the City of New York (28 RCNY ch 3).
Rents in Mitchell-Lama housing are established on a project-by-project basis by that project’s management and are subject to the approval of the supervising governmental agency (Scherer, Residential Landlord-Tenant Law in New York § 6:3 [1997], citing 9 NYCRR 1727-4.1 [a], and 28 RCNY 3-03 [a]). These rents are calculated to cover operation, maintenance, and debt service costs of the particular project. Tenants or cooperative shareholders whose family income exceeds the maximum eligibility amount are required to pay surcharges above the standard rent or maintenance (Private Housing Finance Law § 31 [3]; 9 NYCRR 1727-4.2, 1727-4.3).
Section 35 (2) of the Private Housing Finance Law provides for the voluntary dissolution, also known as a “buy out,” of the limited-profit housing company owning the property (Brightwater Towers Assocs. v New York State Div. of Hous. & Community Renewal, NYLJ, Nov. 6, 1991, at 23, col 4 [Sup Ct, Rings County, Vaccaro, J.], affd as mod on other grounds 212 AD2d 603 [2d Dept 1995]).
Specifically that section provides that limited-profit housing companies which received loans under the Mitchell-Lama program after May 1, 1959 were entitled to leave the program after 20 years of the building’s “occupancy date,” provided that the company paid the balance of the mortgage loans and all other expense incurred in the dissolution (Brightwater Towers Assocs. v New York State Div. of Hous. & Community Renewal, supra; see, Private Housing Finance Law § 96 [1]). Section 12 (3) of the Private Housing Finance Law uses the term “occupancy date” to mean “[t]he date defined in the contract between a company and a municipality or the state, as the case may be, as the date upon which the project is to be deemed *855 ready for occupancy, or if such term is not defined in such contract, the date of issuance of the temporary certificate of occupancy.”
Generally, if the housing company elects to remove a property from Mitchell-Lama regulation, the premises, by operation of law, become subject to the jurisdiction of the Rent Stabilization Law of 1969 (Administrative Code of City of NY, tit 26, ch 4 [RSL]) and Rent Stabilization Code (9 NYCRR parts 2520-2530) (Brightwater Towers Assocs. v New York State Div. of Hous. & Community Renewal, supra, at 24, col 3, citing Administrative Code § 26-504 [a], [b]; 9 NYCRR 2520.11 [c]). In a footnote in the Brightwater Towers decision, Justice Vac-caro noted, inter alla, that section 2520.11 of the Rent Stabilization Code provides, in pertinent part, that:
“ ‘This Code shall apply to all or any class or classes of housing accommodations made subject to regulation pursuant to the RSL or any other provision of law, except the following housing accommodations for so long as they maintain the status indicated below: * * *
“ ‘(c) housing accommodations for which rentals are fixed by the DHCR or HPD .... However, housing accommodations in buildings completed or substantially rehabilitated prior to January 1, 1974, and whose rentals were previously regulated under the PHFL [Private Housing Finance Law] or any other state or federal law, other than the RSL or the City Rent Law, shall become subject to the ETPA [Emergency Tenant Protection Act], the RSL, and this Code, upon the termination of such regulation.’ ” (Brightwater Towers Assocs. v New York State Div. of Hous. & Community Renewal, supra, at 25, n 1, quoting 9 NYCRR 2520.11 [c].)
The court in the Brightwater Towers case (supra) also relied on a document entitled Advisory Opinion No. 1, which was issued by the Commissioner of DHCR on April 24, 1986. In Advisory Opinion No. 1, the Commissioner of DHCR informed both owners and tenants participating in Mitchell-Lama projects “that upon the effective date of dissolution, projects formerly governed by the [Private Housing Finance Law] would be subject to the rent stabilization laws” (Brightwater Towers As-socs. v New York State Div. of Hous. & Community Renewal, supra, at 24, col 3; see also, Scherer, Residential Landlord-Tenant Law in New York § 6:16).
The Rent Stabilization Code, however, generally excludes “housing accommodations in buildings completed or buildings substantially rehabilitated as family units on or after January *856 1, 1974” (9 NYCRR 2520.11 [e]). Neither the Rent Stabilization Code nor Advisory Opinion No. 1 addresses the status of Mitchell-Lama buildings “completed or substantially rehabilitated after January 1, 1974.”
FACTS
Waterside is a Mitchell-Lama residential housing development comprised of six buildings known as, and located at 10, 15, 20, 25, 30, and 35 Waterside Plaza, New York, New York. Numbers 15 and 35 Waterside Plaza are nonresidential buildings.
According to the Waterside defendants, “North Waterside” is a separate residential development and is comprised of a single building located at 40 Waterside Plaza, New York, New York. Like Waterside, North Waterside is a Mitchell-Lama housing development.
Waterside and North Waterside (collectively, the Waterside Plaza complex) were constructed in the early to mid-1970’s, on a platform adjacent to and over the East River. Together, Waterside and North Waterside form a mixed development, consisting of townhouses and four residential towers. In addition, residents of the Waterside Plaza complex enjoy shops and various other project facilities including a gym, pool and clubhouse.
The entire development was financed by a loan from the City of New York and is supervised by HPD. Waterside receives a partial real property tax exemption in the form of reduced “additional rent” under its ground lease with the City of New York. One of the towers, 40 Waterside Plaza, also benefits from a Federal “section 236” mortgage interest reduction subsidy. The Waterside Plaza complex has never been subject to the jurisdiction of DHCR.
A permanent certificate of occupancy for all the buildings in the Waterside Plaza complex was issued on August 30, 1976. Before then, temporary certificates of occupancy for two residential buildings were issued prior to January 1, 1974; one, on August 30, 1973, for 10 Waterside Plaza; the other, on October 31, 1973, for 20 Waterside Plaza. The construction of .the remaining buildings of the residential portion of the Waterside Plaza complex was completed after January 1975. All of the buildings were fully leased by 1975.
On March 2, 1998, the Waterside defendants sent a letter to HPD and the residents of 40 Waterside Plaza, announcing the landlord’s intention to dissolve WHC and to transfer building *857 40 to a new entity. The HPD application stated that all of the apartments located at the Waterside Plaza complex would be decontrolled and that rents would be raised to market levels.
In February 1999, NWRC and WHC notified Deborah Van Amerongen, Director of Housing of the Department of Housing and Urban Development’s (HUD) New York State office, of their intention to prepay their North Waterside mortgage. Simultaneously, NWRC and WHC notified the residents of North Waterside of their pending application before HUD. This notice warned tenants that the owners intended to “remove North Waterside from participation in the Mitchell-Lama program no earlier tho[n] 180 days from now, and will increase rents at North Waterside to market rate levels between 60 days following prepayment and one year following prepayment.”
According to plaintiffs, the Waterside defendants had previously acknowledged that the tenants in the Waterside Plaza complex were protected by the rent stabilization regulatory system (the RSL Rider). At least up to February 1999, all the leases issued by the Waterside defendants contained a copy of a RSL Rider, which stated: “[a]t such time as Waterside Plaza is no longer subject to the provisions of Article 2 of the [Private Housing Finance Law] your apartment will become subject to the provisions of the New York State Rent Stabilization Law (‘RSL’) and the Rent Stabilization Code for the City of New York (‘RSC’) then in effect and shall be registered with the New York State Division of Housing and Community Renewal (‘DHCR’) pursuant to the RSL and RSC. Unless earlier terminated in accordance with its provisions, and except insofar as inconsistent with the RSL, this Lease shall remain in effect until its termination date, at which time you will be offered either a one or two-year renewal lease, at your option, in the form required by DHCR and at such rental as may then be permitted by the Rent Guidelines Board established under the RSL.”
After February 1999, the RSL Rider was not offered to current or prospective tenants. At that time the Waterside defendants filed an application with DHCR with respect to the buildings located at 10, 15, 20, 25, 30, and 35 Waterside Plaza (9 NYCRR 2522.6) requesting that the agency determine whether the Waterside buildings would be subject to the Rent Stabilization Law and Code if the landlord left the Mitchell-Lama program. DHCR notified the tenants of WRC’s request in a letter dated March 1999.
*858 In its DHCR application, WRC contends that all of the buildings in Waterside should be treated as a single unit in accordance with the horizontal multiple dwelling regulation found in section 2520.11 (d) of the Rent Stabilization Code (9 NYCRR 2520.11 [d];* see, Matter of Salvati v Eimicke, 72 NY2d 784 [1988], rearg denied 73 NY2d 995 [1989]; Matter of Bambeck v State Div. of Hous. & Community Renewal, 129 AD2d 51 [1st Dept 1987], lv denied 70 NY2d 615 [1988]). WRC also maintains that the Waterside Plaza complex should be rented at market rates since the majority of buildings iñ the Waterside Plaza complex were completed after January 1, 1974 (9 NYCRR 2520.11 [e]).
Plaintiffs moved against the pending DHCR application by instituting an action in this court on or about June 15, 1999. Plaintiffs, in agreement with the Waterside defendants that the Waterside Plaza complex should be considered a single entity for rent stabilization, seek declaratory relief to that effect, as well as a declaration that the date on the earliest certificate of occupancy applies to all the later buildings in the Waterside Plaza complex, and includes the building located in North Waterside. Plaintiffs allege that all of the buildings in Waterside and North Waterside are actually owned by the City, which, in turn, leases them to WHC. According to plaintiffs, the City employed its power of eminent domain to acquire the site for the Waterside Plaza complex (General Municipal Law art 15). Plaintiffs maintain that the Waterside defendants may not take over the Waterside Plaza site to create market-rate housing since the urban renewal plan referring to the Waterside Plaza complex expressly restricted the property to residential housing and required that a portion of the property be devoted to moderate-income housing.
On July 23, 1999, plaintiffs served a supplemental summons and amended complaint, adding DHCR as a party, and seeking a permanent injunction against DHCR, enjoining it from processing the application of the Waterside defendants. The *859 Waterside defendants served a notice of cross motion to dismiss the amended complaint.
DISCUSSION
Subject Matter Jurisdiction
This court rejects the Waterside defendants’ argument that this court does not have subject matter jurisdiction over the question of whether buildings are subject to New York’s rent regulatory system after they are removed from the Mitchell-Lama program. Article VI, § 7 of the New York Constitution establishes the Supreme Court as the court of general original jurisdiction in law and equity (Sohn v Calderon, 78 NY2d 755, 765 [1991]). “Under this grant of authority, the Supreme Court ‘is competent to entertain all causes of action unless its jurisdiction has been specifically proscribed’ ” (supra, at 766, quoting Thrasher v United States Liab. Ins. Co., 19 NY2d 159, 166 [1967]).
DHCR does not have exclusive jurisdiction over the questions raised in this action. On the contrary, it is well settled that courts are empowered to determine the rent-controlled status of a dwelling unit (Matter of Christy v Lynch, 259 AD2d 324, 326 [1st Dept 1999], citing Swift v 130 W. 57th Corp., 26 NY2d 714, 716, rearg denied 26 NY2d 883 [1970]; see, Axelrod v Starr, 52 AD2d 232, 233 [1st Dept 1976], affd 41 NY2d 942 [1977]; Administrative Code § 26-413 [d] [2]).
As to the Waterside defendants’ remaining jurisdictional arguments, “[w]here a court has concurrent jurisdiction with an administrative agency to adjudicate a particular controversy, the doctrine of ‘primary jurisdiction’ generally enjoins the court from deciding matters within the administrative agency’s jurisdiction, ‘particularly where the agency’s specialized experience and technical expertise is involved’ ” (Rutherford Tenants Corp. v Schmidt, NYLJ, Aug. 3, 1994, at 26, cols 3, 4 [Civ Ct, NY County, Friedman, J.], quoting Sohn v Calderon, supra, 78 NY2d, at 768).
However, the doctrine of primary jurisdiction is not applicable in this instance since the issues before this court are not within DHCR’s specialized experience and do not involve that agency’s technical expertise. In order to determine the rights of the parties, this court must review all underlying agreements and interpret various statutes/regulations and review any applicable legislative history (see, Axelrod v Starr, supra, 52 AD2d, at 233). Furthermore, DHCR has previously analyzed *860 the question of whether rent stabilization may be applied to Mitchell-Lama housing in Advisory Opinion No. 1, issued in April 1986. The basis for this administrative opinion is clearly stated and no expertise is necessary to determine whether the analysis in Advisory Opinion No. 1 should be extended to the present situation, where some of the buildings in the project were completed after 1974. The standard to be employed in determining whether a group of buildings constitutes a horizontal multiple dwelling is well settled (see, Matter of Salvati v Eimicke, 72 NY2d 784, supra; Matter of Bambeck v State Div. of Hous. & Community Renewal, 129 AD2d 51, supra). Hence, the question of whether the Waterside Plaza complex constitutes a single entity for purposes of rent regulation is an issue of fact and does not involve the particularized expertise of DHCR.
This court also rejects DHCR’s and the Waterside defendants’ objection that plaintiffs’ request for a stay of the underlying administrative proceeding constitutes a writ of prohibition which should have been commenced as a CPLR article 78 proceeding. A writ of prohibition in New York is available to restrain an unwarranted assumption of jurisdiction and to prevent a court from exceeding its authorized powers in a proceeding over which it has jurisdiction (Matter of Kuriansky v Seewald, 148 AD2d 238, 241 [1st Dept], lv denied 74 NY2d 6.16 [1989], citing La Rocca v Lane, 37 NY2d 575, 578-579 [1975], cert denied 424 US 968 [1976]). Since this court has concurrent jurisdiction with DHCR, plaintiffs need not invoke a writ of prohibition. However, even if a writ were necessary, the court is not required to dismiss the eighth cause of action but is, instead, empowered to convert that part of the action into a special proceeding (CPLR 103 [c]).
Given the fact of concurrent jurisdiction, the Waterside defendants’ assertion that plaintiffs have failed to exhaust administrative remedies is also without merit.
Prior Action Pending
CPLR 3211 (a) (4) provides that a court may dismiss a proceeding where “there is another action pending between the same parties for the same cause of action in a court of any state or the United States.” This provision clearly indicates that the term “action” refers to a matter pending in front of a judicial forum. Furthermore, the definition of the word “action” in the CPLR does not include administrative proceedings (CPLR 103 [a]).
*861 However, even if CPLR 3211 (a) (4) were applicable to administrative proceedings, priority is not the controlling factor (Seaboard Sur. Co. v Gillette Co., 75 AD2d 525 [1st Dept 1980]). In New York, the practice of determining priorities between pending actions based on the date of filing is a general rule and is not meant to be applied in a mechanical way regardless of other considerations (White Light Prods, v On The Scene Prods., 231 AD2d 90, 97 [1st Dept 1997]). The court’s major concern in determining a motion pursuant to CPLR 3211 (a) (4) is to avoid any potential conflict that might result from a ruling issued by a forum with concurrent jurisdiction (White Light Prods, v On The Scene Prods., supra, at 93).
In order for this court to grant the cross motion to dismiss this present action, the Waterside defendants must demonstrate that there is “sufficient identity as to both the parties and the causes of action asserted in the respective actions” (supra, at 93). Here, the present declaratory judgment action has more parties than the administrative proceeding before DHCR. Furthermore, this present declaratory judgment action covers a wider range of issues, including contractual claims. This declaratory judgment action also raises an issue as to whether the Waterside defendants engaged in improper practices under the guise of enforcing their legal rights. Hence, this present declaratory action is broader in scope than the matter presently before the administrative agency (supra, at 93-94). The resolution of the administrative proceeding will not dispose of all matters or avoid further litigation between the parties in this court (Nationwide Mut. Ins. Co. v Dennis, 14 AD2d 188 [3d Dept], lv denied 10 NY2d 708 [1961]).
Since CPLR 3211 (a) (4) vests this court with broad discretion in determining such a motion, this court finds that judicial economy will not be served by dismissing the New York County declaratory judgment action in favor of the DHCR administrative proceeding. The Waterside defendants’ cross motion to dismiss on the ground of prior action pending must be denied (Whitney v Whitney, 57 NY2d 731 [1982]).
Preliminary Injunction
In order to be entitled to a preliminary injunction, plaintiffs are required to show a likelihood of success on the merits, irreparable injury absent a granting of injunctive relief and a balancing of the equities in their favor (Aetna Ins. Co. v Ca-passo, 75 NY2d 860, 861 [1990]; Workbench, Inc. v Syblin Realty Corp., 140 AD2d 693, 694 [2d Dept 1988]).
*862 In this instance, plaintiffs have been able to show the likelihood of success. Prior case law and administrative rulings have favored continuing rent protection for Mitchell-Lama tenants under the rent stabilization scheme, at least in certain instances. Furthermore, even if the record does not support the parties’ claim that the Waterside Plaza complex is a single entity for purposes of rent regulation, some of the buildings in the project were constructed prior to the rent stabilization cut-off date of January 1974.
The balance of the equities is in plaintiffs’ favor since plaintiffs’ rights could be directly effected if this matter proceeds administratively. This court is better able to determine whether the underlying contracts and/or deeds, which are not under the control of DHCR, require the owner or landlord to continue rent regulatory practices beyond 20 years. Furthermore, since the Waterside Plaza complex is still a Mitchell-Lama development, DHCR has no jurisdiction over the type of improper practices alleged in the amended complaint.
The Waterside defendants are not harmed by court review since they may still continue their plans to prepay their mortgages. Furthermore, the proposed injunction does not affect any applications pending before HUD and HPD. In fact, a complete judicial review of the underlying documents could also protect both tenants and the Waterside defendants from future litigation over land rights or additional damage claims.
Hence, this court grants plaintiffs’ motion for a preliminary injunction. The present application before DHCR is stayed. The Waterside defendants are hereby enjoined from proceeding with their present application before DHCR or from commencing any other application before that agency which relates to the issues raised by plaintiffs in this court.

 The horizontal multiple dwelling provision provides, in pertinent part, that “a building shall be deemed to contain six or more housing accommodations if it was part of a multiple family garden-type maisonette dwelling complex containing six or more housing accommodations having common facilities such as a sewer line, water main or heating plant and was operated as a unit under common ownership on the date the building or complex first became subject to the RSL, notwithstanding that Certificates of Occupancy were issued for portions thereof as one- or two-family dwellings” (9 NYCRR 2520.11 [d]).