■ In the Matter of WILLIAM GOTTLIEB, Respondent, v MANUEL MIRABAL, as Deputy Commissioner of the Division of Housing and Community Renewal, Appellant. JACQUELINE HENDERSON, Intervenor-Respondent-Appellant.—Order and judgment (one paper), Supreme Court, New York County (Wallach, J.), entered on July 10, 1985, which annulled the determination of respondent Deputy Commissioner of the Division of Housing and Community Renewal dated November 27, 1984, finding that the two buildings located at 415 Bleecker Street and 417 Bleecker (82 Bank) Street comprise a horizontal multiple dwelling, and that petitioner was required to register the subject apartment with the Rent Stabilization Association, unanimously reversed, on the law, and the determination is reinstated, without costs.

Petitioner William Gottlieb is the owner of the premises located at 415 Bleecker Street, and of the adjacent building located at 417 Bleecker Street, also known as 82 Bank Street. Intervenor-respondent Jacqueline Henderson has been the tenant in the second floor apartment at 415 Bleecker Street since 1975. In 1978, Henderson filed a complaint of rent overcharge with the New York City Conciliation and Appeals

Board (CAB), the predecessor of respondent, the New York State Division of Housing and Community Renewal (DHCR). She claimed that her apartment was part of a horizontal multiple dwelling subject to the Rent Stabilization Law of 1969, as amended by the Emergency Tenant Protection Act of 1974 (ETPA, L 1974, ch 576, § 4), pursuant to Administrative Code of the City of New York § YY51-3.1. The CAB referred the complaint to the New York City Rent Commissioner, whose inspectors visited the site and prepared a report. After considering the submissions of the respective parties, the District Rent Administrator of the Office of Rent Control determined that the subject building was part of a horizontal multiple dwelling based on a physical inspection that found a combination bar, cafe and restaurant extended through the two buildings. The director further ordered that the apartment revert to rent-controlled status, since petitioner had rejected the opportunity to file an application for late enrollment with the Rent Stabilization Association. (Administrative Code § YY51-4.0 [repealed L 1983, ch 403, § 7, eff Apr. 1, 1984].)

By order and opinion of November 27, 1984, the Deputy Commissioner of the DHCR affirmed the finding that the buildings at issue met the criteria of a horizontal multiple dwelling and were therefore subject to registration under the Rent Stabilization Law. The Commissioner found that the buildings "share a common boiler and shared a common commercial enterprise at one point after the tenant moved to the subject accommodation, and that the residential space at 82 Bank Street is currently vacant." The Commissioner also affirmed the sanction of reversion to rent-controlled status. This CPLR article 78 proceeding ensued. By order of April 1, 1985, Special Term (Stecher, J.), granted Henderson's motion for leave to intervene. By order of July 17, 1986, we granted the motion of respondent Mirabal to withdraw his appeal.

Special Term held that the Commissioner's determination was supported by substantial evidence and had a rational basis, and upheld the penalty. However, the court annulled the determination, holding that class B dwelling units were not cognizable as dwelling units in determining whether a class A multiple dwelling contained the "six or more dwelling units" required for coverage under the Rent Stabilization Law pursuant to Administrative Code § YY51-3.0. We disagree with Special Term, and reverse.

The sole issue presented for resolution is whether class B dwelling units are dwelling units cognizable under Adminis-

trative Code § YY51-3.0. Henderson concedes for purposes of this appeal, and the 1980 certificate of occupancy and the inspection report in the administrative record reflect, that the building at 417 Bleecker Street was, prior to being emptied and renovated in 1980, a class B hotel containing 35 single rooms.

In *Matter of Howard v Wyman* (28 NY2d 434, 438 [1971]), the court stated: "It is well settled that the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld. (See, e.g., *Matter of Mounting & Finishing Co.* v. *McGoldrick,* 294 N. Y. 104, 108; *Matter of Colgate-Palmolive-Peet Co.* v. *Joseph,* 308 N. Y. 333, 338; *Udall* v. *Tallman,* 380 U. S. 1, 16-18; *Power Reactor Co.* v. *Electricians,* 367 U. S. 396, 408.)" In our view, Special Term's restrictive interpretation of section YY51-3.1 is contrary to the clear wording of the statute.

Section YY51-3.1* provides that the units in two structures having common facilities may be counted together in a "horizontal multiple dwelling", defined as follows: "For purposes of this title a class A multiple dwelling shall be deemed to include multiple family garden-type maisonette dwelling complex containing six or more dwelling units having common facilities such as sewer line, water main, and heating plant, and operated as a unit under a single ownership on May sixth, nineteen hundred sixty-nine, notwithstanding that certificates of occupancy were issued for portions thereof as one- or two-family dwellings." The statute refers to "six or more dwelling units". "[M]ultiple dwellings * * * as defined by statute * * * are classifiable, somewhat overlappingly, as either A or B (Multiple Dwelling Law, § 4, subd 7). A class A multiple dwelling 'is occupied, as a rule, for permanent residence purposes' while a class B multiple dwelling, essentially not one constructed for householding, 'is occupied, as a rule transiently, as the more or less temporary abode of individuals or families who are lodged with or without meals' (Multiple Dwelling Law, § 4, subds 8, 9)." *(La Guardia v Cavanaugh,* 53 NY2d 67, 69 [1981].) The statute does not limit in any way the classification of the units which comprise a horizontal multiple dwelling. Had the Legislature intended to require that only class A dwelling units be incorporated into a horizontal multiple dwelling for purposes of coverage under the Rent Stabilization Law, it could easily have specified that the six or

* There are two sections YY51-3.1 of the Administrative Code of the City of New York.

more dwelling units be class A dwelling units. This view is consistent with the canon of statutory construction "expressio unius est exclusio alterius."

The statute neither adds nor subtracts from the definition of "class A multiple dwellings * * * containing six or more dwelling units" (Administrative Code § YY51-3.1) subject to the Rent Stabilization Law, as amended by the ETPA, pursuant to Administrative Code § YY51-3.0. As Senator Marchi's supporting memorandum to Laws of 1981 (ch 675) indicates, the Legislature in enacting the ETPA in 1974 had intended section YY51-3.0 to encompass class B dwelling units. (1981 NY Legis Ann, at 354-355, cited in *Hickey v Bomark Fabrics,* 120 Misc 2d 597, 598 [App Term, 1st Dept 1983].) Contrary to petitioner's contention, the status of a class A multiple dwelling under the Multiple Dwelling Law is not altered by the mixture of class A and B units. Multiple Dwelling Law § 4 (16) provides in pertinent part: "When a class A multiple dwelling is used wholly or in part for single room occupancy, it remains a class A multiple dwelling." The aggregation of the 35 class B and three class A units in the 415-417 Bleecker Street complex does not affect its status as a "class A multiple dwelling" under section YY51-3.1.

In view of the foregoing, it is unnecessary to reach the related, but more nettlesome contention that the amendment of section YY51-3.0 by Laws of 1981 (ch 675), which abrogated *La Guardia v Cavanaugh (supra)* and certified the inclusion of class B dwelling units under the Rent Stabilization Law immediately as of its enactment, retroactively changed the criteria for a horizontal multiple dwelling under section YY51-3.1 and validated the administrative determination. *(Tegreh Realty Corp. v Joyce,* 88 AD2d 820 [1st Dept 1982].) Concur—Kupferman, J. P., Fein, Milonas, Rosenberger and Ellerin, JJ.