In the Matter of DIRK H. BAMBECK et al., Respondents, v
STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL,
OFFICE OF RENT ADMINISTRATION, Appellant.

First Department, June 18, 1987

## APPEARANCES OF COUNSEL

*Sheldon D. Melnitsky* of counsel *(Dennis B. Hasher,* attorney), for appellant.

*Robert H. Berman* of counsel *(Finkelstein, Borah, Schwartz, Altschuler & Goldstein, P. C.,* attorneys), for respondents.

**OPINION OF THE COURT**

KASSAL, J.

Petitioners are the owners of the subject premises, located at 206-208 East 35th Street, originally constructed in 1857. They took title on October 10, 1980 by a single deed from Luba Realty, Inc., a corporation which had owned the premises since December 29, 1978. During the time Luba held title, petitioners were the principals of that corporation. Originally, the building premises, 25 feet wide and three stories high, were constructed as two-family dwellings, each a triplex with a basement and a separate service and family entrance. The property, which has been in common ownership since 1914, was converted from a two-family house to a rooming house in the 1930's and, in 1952, there was another conversion to an apartment house. Initially, subject to rent control, the premises were decontrolled in 1953. At the present time, the building contains eight apartment units, four on each side.

The dispute as to the status of the buildings has been pending for some time and was the subject of a prior appeal, *sub nom. Matter of Luba Realty v Joy* (88 AD2d 864) when the matter was remanded to respondent's predecessor, the Conciliation and Appeals Board, to determine whether the premises form a horizontal multiple dwelling, consisting of eight apartments.

After considering the submissions by the owners and the tenants on such remand, respondent rendered its determination, setting forth the various factors and concluding that the premises were a single multiple dwelling, subject to the Rent Stabilization Law and the Emergency Tenant Protection Act of 1974. The opinion recited the contentions of the respective parties, including the owners' claim that these were separate buildings, not subject to rent stabilization.

The owners' contentions were that each building had a separate certificate of occupancy; a separate cellar, each with its own entrance; a separate chimney and flue; each building had a separate front stairway entrance, separate front hallways, public halls, interior stairways, mailboxes and bell and buzzer systems; each had separate multiple dwelling registration numbers; and each had separate real estate block and lot numbers recorded at the City Register's office. As a result, the buildings were billed and taxed separately by the city for real estate, water and sewer taxes and had separate municipal inspections and violation reports. While, at one time, there

was one heating system, shared by both, each currently has its own individual heating plant.

In contrast, the tenants, including some who had resided in the building for 27 years, claimed that during this time there has been one common boiler for both sides, located in the cellar under No. 208, and one common oil storage tank, located in the cellar under No. 206. There is only one sewer pipe leading from the building to the street, under No. 206, and only one water main leading into the building, located in the cellar under No. 206, which is the source of water for all eight apartments. The tenants pointed to the fact that there was a common cellar which was divided by a weight-bearing wall and which bisected the building, but that there is a door-sized opening in the wall, which makes the cellar accessible from either building. They disputed the owners' claim that there were separate chimneys, arguing that, although there are two chimneys, the rear chimney is for all the eight back-to-back fireplaces in the building, one for each apartment, and the other, in the front, is used for furnace effluence from the common oil burner. The buildings share a common electrical wiring system and a single fuse box, to the extent that when No. 208 had a series of blackouts in 1978, traced to a faulty air conditioner in that building, this also resulted in blackouts in No. 206. For at least the last 25 years, there has been one superintendent and the premises, with a long history of common ownership, has been operated as a single enterprise since 1914. A joint integrated sprinkler system was installed in 1937, at or about the time the building was converted into a rooming house and both sides of the building share the same smoke control system.

Photographs of the building in the record depict a single, uninterrupted wall surface, cornice and molding, with one drainpipe in the center, leading to a drain on the No. 208 side, without any drain on the No. 206 side. Although no engineering reports were submitted in the proceedings before respondent, the tenants claimed that the weight-bearing wall which divided the two sides of the building would be insufficient to support either side as an exterior wall and neither side of the building could be razed without undermining the structural integrity of the adjoining half, thereby causing the collapse of the entire building.

Considering all these factors, respondent concluded that the building structure was not being operated as two independent units, constituted a horizontal multiple dwelling, containing

six or more units and, therefore, was subject to the Rent Stabilization Law. In doing so, the Commissioner referred to the presence of a common heating plant (furnace and oil source), a single sewer outlet and water main, a common bank of eight gas meters, a single power line leading into the building and a single bank of electric meters for all eight apartments, as well as the fact that the structure, now and in the past, had been operated under a common ownership. The Commissioner also expressly rejected the owner's contention that the only horizontal multiple dwellings subject to rent stabilization were garden-type maisonette dwelling complexes.

In granting the owners' CPLR article 78 petition, Special Term disagreed, observing, "it clearly appears to this court that the structures are not so interdependent or structurally integrated that future independent sale would be prevented." In our view, in doing so, the court inappropriately substituted its judgment for that of respondent on factual matters which were within respondent's primary jurisdiction to determine. The central issue at Special Term was whether the determination had a rational basis and, although the court may, in the first instance, have decided the issue differently, it could not substitute its own views for those of the agency in the absence of a finding that the administrative determination was arbitrary, capricious or irrational *(Matter of Mid-State Mgt. Corp. v New York City Conciliation & Appeals Bd.,* 112 AD2d 72, *affd* 66 NY2d 1032; *Matter of Phelps Mgt. Co. v Gliedman,* 86 AD2d 540; *Matter of Plaza Mgt. Co. v City Rent Agency,* 48 AD2d 129, *affd* 37 NY2d 837).

Over the years, the issue of horizontal multiple dwelling status has been the subject of much litigation, as a result of which certain clearly delineated principles have evolved. In *Matter of Love Sec. Corp. v Berman* (38 AD2d 169, 170-171), Associate Justice Steuer, in an opinion for this court, enunciated the controlling rule in terms of judicial review of an administrative determination as follows: "The factors which contribute to determination of such a question are common ownership, management, including supply of services, and common facilities. As usual in such questions, cases present different combinations of those factors and *no one factor can be said to be determinative* (see *Matter of Coyle v. Gabel,* 21 N Y 2d 808; *Matter of Castleton Estates v. Abrams,* 1 A D 2d 390; *Matter of Goldstein v. Gabel,* 44 Misc 2d 20); although in all probability diversified ownership alone would indicate separate units *(Matter of Amorelli v. Berman,* 19 N Y 2d 960).

Where there are divergent factors which might well lead to different conclusions, the initial decision is for the respondent Rent Administrator, and his determination, unless arbitrary, is final *(Matter of Venizelos* v. *Abrams,* 1 A D 2d 782). The presence of the several enumerated factors shows that there is a rational basis for the Administrator's conclusion, and as such it should not be disturbed *(Matter of Colton* v. *Berman,* 21 N Y 2d 322; *Matter of Mounting & Finishing Co.* v. *McGoldrick,* 294 N. Y. 104)." (Emphasis added.)

Similarly, in *Matter of Menoudakos v Berman* (32 AD2d 631, *affd* 25 NY2d 723), we held that the Rent Commissioner's determination was not arbitrary and had a rational basis in concluding that the buildings containing eight apartments were part of an eight-family complex, not four two-family houses, holding *(supra,* at 631-632): "The Rent Commissioner is the arbiter of questions of fact and his determination may not be set aside unless clearly arbitrary. *(Matter of Venizelos* v. *Abrams,* 1 A D 2d 782.) The function of the court is exhausted when there is a rational basis for the conclusion reached by the Rent Commissioner. *(Matter of Mounting & Finishing Co.* v. *McGoldrick,* 294 N. Y. 104; *Matter of Colton* v. *Berman,* 21 N Y 2d 322.) In our opinion on this record the Rent and Housing Maintenance Commissioner's finding that the subject structure was an eight-family complex rather than four two-family houses was supported by substantial evidence and had a rational basis. *(Matter of Cuccia* v. *Weaver,* 9 A D 2d 689; *Matter of Bobal Holding Corp.* v. *McGoldrick,* 285 App. Div. 1177.) Consequently, the court is not entitled to substitute its judgment for that of the Commissioner."

In *Matter of 11th Co. v Joy* (92 Misc 2d 664), Special Term dismissed an article 78 proceeding to annul an administrative determination which found three adjacent buildings, each containing less than six dwelling units, to be subject to rent stabilization as part of a horizontal multiple family dwelling complex. Citing the critical factors consisting of the long history of uninterrupted common ownership, the presence of a restaurant occupying the basement and cellar of all three houses and the fact that all three shared combined facilities, including a heating plant, centralized gas and electric meters, the court concluded that the matter was one appropriately for the administrative agency to determine and the Commissioner's ruling, having a rational basis, could not be disturbed in the proper exercise of judicial review.

Recently, in *Matter of Gottlieb v Mirabal* (123 AD2d 574, *lv*

*denied* 69 NY2d 609), we sustained the determination of the Deputy Commissioner of the Division of Housing and Community Renewal, which found that two buildings, located at 415 Bleecker Street and 417 Bleecker (82 Bank) Street, comprised a horizontal multiple dwelling. The administrative determination was based in part upon a physical inspection, which disclosed a combination bar, cafe and restaurant extending through both buildings, the Commissioner's order and opinion also finding that the buildings "share a common boiler and shared a common commercial enterprise". We held *(supra,* at 576): "In *Matter of Howard v Wyman* (28 NY2d 434, 438 [1971]), the court stated: 'It is well settled that the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld. (See, e.g., *Matter of Mounting & Finishing Co.* v. *McGoldrick,* 294 N. Y. 104, 108; *Matter of Colgate-Palmolive-Peet Co.* v. *Joseph,* 308 N. Y. 333, 338; *Udall* v. *Tallman,* 380 U. S. 1, 16-18; *Power Reactor Co.* v. *Electricians,* 367 U. S. 396, 408.)' "

Applying this standard of review here, there was a rational basis for the Commissioner's determination that the buildings constituted a single multiple dwelling, subject to the Rent Stabilization Law and the Emergency Tenant Protection Act. In ruling otherwise, Special Term erred in substituting its judgment for that of the agency on an issue which was peculiarly within the Commissioner's province to determine in the first instance. Notwithstanding the fact that there are separate characteristics, including separate entranceways, interior and exterior stairways, hallways, mailboxes, bell and buzzer systems, certificates of occupancy, multiple dwelling registration numbers, lot and block numbers and individual treatment accorded by the city in terms of real estate, water and sewer taxes and inspections, there are sufficient common features present to support the administrative determination as rational under the applicable standard of judicial review.

As observed, the premises have had a long history of common ownership, for more than 70 years, and, over an extensive period, there has been a common heating system, boiler, gas service, electrical wiring system, water supply and sewer system, as well as common maintenance, serviced by one superintendent for at least the last 25 years. Architecturally, this appears to be one building, notwithstanding the massive, brick, interior weight-bearing wall which separates the two sides. While consideration of the several factors present here

makes the determination in this case close, that was a matter for the Commissioner, whose conclusion was neither arbitrary nor capricious.

We recognize that there have been other cases which have held that certain contiguous buildings were separate and did not constitute a combined multiple dwelling, notwithstanding that they shared one heating plant and common ownership and operation *(DeLorenzo v Krizman,* NYLJ, May 16, 1986, at 12, col 1 [App Term, 1st Dept], *affd* 125 AD2d 1015; *Nicholson & Nichols v McClintock,* NYLJ, Mar. 3, 1987, at 5, col 1 [App Term, 1st Dept]).

In *DeLorenzo (supra),* the buildings had a common ownership and, for 30 years, there was a common heating and hot water system. They had been managed as a single unit for at least that period of time. However, ownership had been obtained by separate deeds and there were separate entrances for each building, with no common passageway from one to the other. In addition, each was separately billed for water, sewer and real estate taxes and each building had its own water supply and sewer system, with separate electrical service and metering and a separate line for gas service. We agreed with the Appellate Term that, evaluating all of the pertinent factors, the buildings were independent structures, not a single entity to be treated as a horizontal multiple dwelling.

Similarly, in *Nicholson (supra),* it appeared that, notwithstanding that the four buildings shared a common boiler and single ownership, each was separately billed for water and sewer taxes, had separate electrical service and metering, its own street entrance, and two buildings were separately registered as multiple dwellings under a separate certificate of occupancy. The buildings had not been conveyed by a single deed with single metes and bounds description and, considering all of the factors, the Appellate Term concluded that the mere fact that the contiguous buildings had a common ownership and shared a common boiler, without more, did not create a combined multiple dwelling.

However, and significantly unlike our case, the issue in *DeLorenzo* and in *Nicholson (supra)* was presented to the courts in the first instance and not, as here, on judicial review of an administrative determination. In concluding otherwise in our case, Special Term misperceived its role on judicial review, limited to whether the administrative agency's find-

ings had a rational basis or were arbitrary and capricious. Considering the close factual issue presented on this record, there was a rational basis for the determination, which must be sustained.

Relying upon a recent New York Supreme Court decision (*Salvati v Eimicke,* NYLJ, July 30, 1986, at 6, col 3), the owners contend that the buildings here cannot be considered a horizontal multiple dwelling since they do not satisfy the statutory standard for a garden-type maisonette dwelling project under Multiple Dwelling Law, article 5-A, § 163. Notwithstanding the result reached in *Salvati,* which is not before us at this time, that same contention has been raised in other cases and was rejected by us. We have in the past considered other residential buildings and have sustained their classification as horizontal multiple dwellings, subject to rent stabilization, notwithstanding that they were not located in garden-type maisonette dwelling complexes (*see, Gottlieb v Mirabal, supra; McDermott v S & M Enters.,* 114 AD2d 746; *Matter of Davbern Assocs. v Joy,* 97 AD2d 986, *lv denied* 61 NY2d 604; *see also, Matter of 11th Co. v Joy, supra,* 92 Misc 2d, at 665).

The issue in our case is not whether the building amounts to a garden-type maisonette dwelling project, within the definition contained in Multiple Dwelling Law § 163, but rather, whether the various factors present here are sufficient to conclude that the common facilities, ownership and management warrant treating the complex as one integrated unit and multiple dwelling for purposes of rent stabilization. The Commissioner considered all the factors and concluded that the common features predominate. On this record, we find no reason to interfere with that reasoned determination that buildings 206 an 208 East 35th Street, together, comprise a horizontal multiple dwelling, subject to the Rent Stabilization Law and the Emergency Tenant Protection Act.

Accordingly, the judgment, Supreme Court, New York County (Francis N. Pecora, J.), entered May 13, 1986, which granted petitioners' application pursuant to CPLR article 78 and annulled and set aside the determination and order of respondent's Commissioner, dated June 11, 1985, which had found that the premises located at 206 and 208 East 35th Street comprised a single horizontal multiple dwelling, subject to the provisions of the Emergency Tenant Protection Act and the Rent Stabilization Law, should be reversed, on the law, and respondent's determination and order reinstated, without costs or disbursements.

KUPFERMAN, J. P., ROSS, MILONAS and ELLERIN, JJ., concur.

Judgment, Supreme Court, New York County, entered on May 13, 1986, unanimously reversed, on the law, and respondent's determination and order reinstated, without costs and without disbursements.