■ In the Matter of LINDA SALVATI et al., Respondents, v WILLIAM B. EIMICKE, as Chairman of the Division of Housing and Community Renewal, Appellant. BARBARA MATTURA et al., Intervenors-Respondents-Appellants.—Appeal from an order and judgment (one paper) of the Supreme Court, New York County (Edward Greenfield, J.), filed July 28, 1986, dismissed as superseded by the appeal from the order and judgment (one paper) of July 9, 1987, without costs. Order and judgment (one paper), Supreme Court, New York County (Edward J. Greenfield, J.), entered July 9, 1987, which granted reargument, and upon reargument, adhered to the prior judgment, entered July 28, 1986, which reversed, annulled and set aside respondent's order issued October 30, 1985 finding petitioners' premises not exempt from the Emergency Tenant Protection Act of 1974 and the Rent Stabilization Law, reversed on the law and the petition dismissed, without costs.

The CPLR article 78 proceeding originated with two rent overcharge complaints filed by the tenant intervenors-respondents with respondent's predecessor agency, the New York City Conciliation and Appeals Board. The intervenors-respondents alleged that the subject premises, 184 and 186 Sixth Avenue, were subject to rent stabilization inasmuch as the buildings were attached, contained seven units, were jointly owned, and contained a common sewer line, heating system and water main. The complaints were transferred to the Rent

Control Division of the New York City Department of Housing Preservation and Development since the premises had not been enrolled with the Rent Stabilization Association. The agency found that based on the evidence submitted, the adjoining structures constituted a "horizontal multiple dwelling", required to be registered with the Rent Stabilization Association. As a consequence of the landlords' failure to register the buildings with the Rent Stabilization Association, the agency determined that the premises were subject to rent control, and fixed the appropriate rents.

Following petitioners' protest of the decision, respondent Division of Housing and Community Renewal issued an order and opinion, dated October 30, 1985, which denied the appeal and directed that the order fixing regulated rents be affirmed. Respondent held that the buildings, which together contained more than six apartments, had a common boiler, and had a common ownership by the petitioner's family since 1934, comprised a "horizontal multiple dwelling." The premises were thus subject to rent control.

In response, petitioner commenced this article 78 proceeding to set aside and annul said respondent's determination. The motion court annulled the order, finding that it was unsupported by substantial evidence and affected by an error of law. The court held that in order for buildings to constitute a "horizontal multiple dwelling" complex, subject to rent stabilization, they must be a "garden-type maisonette dwelling" complex as defined in Multiple Dwelling Law § 163. The court determined that the evidence of commonality was insufficient to support the respondent's determination that the premises constituted a "horizontal multiple dwelling", determining that aside from a common boiler, the facilities were separately maintained and that common ownership had not been adequately established.

Administrative Code of the City of New York (Rent Stabilization Law) § 26-504 (a) (formerly § YY51-3.0) provides, in part, that it shall apply to "Class A multiple dwellings * * * containing six or more dwelling units". Section 26-505 (formerly § YY51-3.1) provides that: "a class A multiple dwelling shall be deemed to include a multiple family garden-type maisonette dwelling complex containing six or more dwelling units having common facilities such as sewer line, water main, and heating plant, and operated as a unit under a single ownership on May sixth, nineteen hundred sixty-nine, notwithstanding that certificates of occupancy were issued for portions thereof as one- or two-family dwellings."

The motion court interpreted this provision to mean that a "horizontal multiple dwelling" must qualify as a "garden-type maisonette" dwelling as defined in Multiple Dwelling Law § 163, in order to be covered by the Rent Stabilization Law. Such an interpretation was rejected in *Matter of Bambeck v State Div. of Hous. & Community Renewal* (129 AD2d 51 [1st Dept 1987]), decided after the orders appealed from here. In *Bambeck* this court upheld the classification of buildings as a "horizontal multiple dwelling" complex despite their failure to conform to the statutory definition of a "garden-type maisonette dwelling" complex. This court regarded the key issue in making the determination to be whether "the various factors" were "sufficient to conclude that the common facilities, ownership and management warrant treating the complex as one integrated unit and multiple dwelling for purposes of rent stabilization." *(Supra,* at 58; *see also, Matter of Love Sec. Corp. v Berman,* 38 AD2d 169, 170 [1st Dept 1972].) Further, the language of Administrative Code § 26-505, specifically the words "shall be deemed to include a multiple family garden-type maisonette dwelling complex" is inclusive rather than exclusive and does not restrict the definition of dwellings covered by the act to "garden-type maisonette" structures. Concur—Murphy, P. J., Kupferman, Sandler, Kassal and Smith, JJ.