OPINION OF THE COURT
Titone, J.
 In this action and proceeding, the Supreme Court, New York County, granted plaintiff landlord judgment declaring that he is entitled under the New York City Rent and Eviction Regulations and the Rent Stabilization Code to demolish his building, to evict his rent-control tenants and to refrain from offering renewal leases to his rent-stabilization tenants. The primary question presented by this appeal is whether the Supreme Court had concurrent authority to entertain the dispute in light of the various sections of the Regulations and the Code that specifically provide for the resolution of such disputes, at least in the first instance, by the Division of Housing and Community Renewal (DHCR), the administrative agency charged with implementing those statutes. We hold that DHCR had exclusive original jurisdiction in this situation and, accordingly, that plaintiff’s complaint and petition should have been dismissed.
This landlord-tenant dispute has its origins in a three-alarm fire that occurred on March 8, 1986 in a 39-unit apartment building located at 306-310 West 51st Street in Manhattan. Most of the apartment units in the building, which was severely damaged in the fire, are subject to either rent-control or rent-stabilization laws.
As a result of the fire damage, the New York City Department of Housing Preservation and Development (HPD) issued notices that the building contained violations of the Housing Maintenance Code. Additionally, the tenants, who had lived in the building from 8 to 45 years, brought an action in Civil Court to compel plaintiff, the building’s owner, to make the repairs necessary to render their units habitable.
In response, plaintiff commenced an action in Supreme Court against the tenants and HPD for a declaration that under the applicable rent-control and rent-stabilization regulations he was entitled either to demolish the building or to remove the housing accommodations from the market because the cost to render them safely habitable was equal to or *762 exceeded the building’s assessed value (see, Administrative Code of City of New York § 26-408 [b] [3], [4], [5] [a]; 9 NYCRR 2204.8 [a] [1]; 2524.5 [a] [2]). In addition, plaintiff sought a declaration that he was entitled to be issued "certificates of eviction,” which the law requires as a condition precedent to an owner’s regaining possession of rent-controlled premises in these circumstances (see, Administrative Code § 26-408 [a]). Finally, plaintiff sought permanent injunctive relief precluding HPD and the tenants from pursuing their efforts to force him to correct outstanding violations through administrative or Civil Court proceedings.
Proceeding initially by order to show cause, plaintiff moved for a preliminary injunction against HPD’s enforcement efforts and, alternatively, for an order consolidating his Supreme Court action with the pending Civil Court action brought by the tenants. Defendants opposed the motion and asserted, among other things, that the court lacked subject matter jurisdiction of the controversy. The court denied plaintiff’s requests for provisional relief and consolidation, but it did temporarily stay the Civil Court proceedings and set the controversy down for an immediate trial, thereby implicitly rejecting defendants’ subject matter jurisdiction arguments. The Appellate Division revised the Supreme Court order in one minor respect and, as modified, affirmed without mention of the jurisdictional issue (125 AD2d 227).
The jurisdictional problem was again addressed when DHCR moved to intervene in the Supreme Court action for the limited purpose of raising that threshold issue. This time, the Supreme Court explicitly ruled on the issue, concluding that, as a court of unlimited equitable jurisdiction, it had concurrent authority to determine the dispute. The court also held that this was a proper case for it to exercise its concurrent authority because "[f]rom past experience * * * if this matter was referred to DHCR, it would not be afforded the expeditious treatment necessary to protect the rights of the litigants.” Accordingly, DHCR’s motion was denied in an order that was subsequently affirmed (133 AD2d 1021).
While these preliminary matters were sub judice, DHCR was conducting a related investigation into the tenants’ charges of landlord harassment (see, Administrative Code § 26-413 [b] [2]; § 26-412 [d]; § 26-516 [c]; see also, 9 NYCRR 2526.2 [c] [2]; id., part 2206). To forestall administrative disposition of these charges, plaintiff moved within the declaratory judg *763 ment action for an order staying the agency’s harassment proceeding. Plaintiff also commenced a separate CPLR article 78 proceeding against DHCR by order to show cause, seeking similar relief. The trial court granted the stay and also signed the order to show cause, which included an interim stay of the harassment proceeding.[1] The court based its determination on its conclusion that the issues in the administrative harassment proceeding were factually related to those in the declaratory judgment action and that the waste of resources, coupled with the risk of inconsistent results, warranted the interim relief.
Following a plenary trial of the factual and economic claims underlying the declaratory judgment action, Supreme Court found that plaintiff had satisfied the requirements of the rent-control and rent-stabilization provisions that permit an owner to recover possession of the housing accommodations where he has a good-faith intention promptly to demolish the building and construct a new one (Administrative Code § 26-408 [b] [4], [5]; 9 NYCRR 2524.5 [a] [2]). Specifically, plaintiff proved, to the court’s satisfaction, that he had the "financial capability] to accomplish his expressed * * * purpose of demolishing the building and constructing a new [one],” that the mortgagee had no objection to plaintiff’s plans, that plaintiff had provided the notifications required by local zoning regulations, that plaintiff’s stated willingness to offer relocation allowances to evicted tenants appeared to comply with "all applicable legal requirements,” that the cost of removing existing violations would exceed or be substantially equal to the building’s assessed value and that plaintiff’s architect had prepared plans for submission to the Building Department for a new structure containing 40 apartment units, one more than the existing structure contained. Finally, the court found that plaintiff had satisfied the requirements of the Sound Housing Law (L 1974, ch 1022, as amended by L 1975, ch 360, codified at Administrative Code § 26-408 [b] [5]) by demonstrating that there was no "reasonable possibility that [he could] make a net annual return of [8lá%] of the assessed value of the subject property” and that he had not intentionally misman *764 aged the property in order to impair its ability to earn such a return.
Accordingly, the court held that, subject to his obtaining the necessary Building Department approvals (see, Administrative Code § 26-408 [b] [4] [d]; § 26-511 [c] [9]) and his formal offer of suitable relocation stipends to the tenants (see, 9 NYCRR 2524.5 [c]), plaintiff was entitled (1) to be relieved of his statutory duty to give renewal leases to the rent-stabilization tenants, (2) to be issued certificates of eviction for the existing rent-control tenants, (3) to be issued no-harassment certificates by HPD under local zoning regulations for the Clinton Hill District and (4) to "take any and all appropriate steps” to evict the rent-control and rent-stabilization tenants. The court also granted plaintiff relief in the article 78 proceeding by permanently enjoining DHCR from taking further action against him in connection with the pending harassment charges. After consolidating the declaratory judgment action with the article 78 proceeding for the purpose of argument alone and after granting DHCR permission to intervene in the action, the Appellate Division affirmed each of these rulings. The court subsequently granted the unsuccessful appellants leave to take a further appeal, certifying the following question of law: "Were the order and judgment of the Supreme Court, as affirmed by this Court, properly made?” We now reverse.
A building owner’s right to evict tenants protected by the New York City rent control laws is governed by section 26-408 of the Administrative Code of the City of New York. Section 26-408 (a) lists seven grounds for evicting rent-control tenants "for cause” (Administrative Code § 26-408 [a] [1]-[7]), and section 26-408 (b) delineates the other circumstances in which owners of rent-controlled apartment units may regain possession, including situations where the owner has an "immediate and compelling need [to recover the premises] for his or her own personal use” or wishes to regain control of a unit that has been sublet (id., § 26-408 [b] [1], [2]). Also included in this category are situations in which the owner plans an immediate "substantial” renovation or complete demolition of the building (id., § 26-408 [b] [3], [4]).
Where a section 26-408 (b) eviction is sought, the landlord must apply for and obtain a "certificate of eviction,” which *765 "the city rent agency [now the DHCR[2]] shall issue * * * in accordance with its rules and regulations” (id., § 26-408 [b] [emphasis supplied]). When the specific ground for eviction is the owner’s "good faith” intention to demolish the building, a certificate cannot be issued unless "[the] agency determines” that the new building will contain a greater number of apartment units than the demolished building,[3] "[the] agency determines that the issuance of such certificate is not inconsistent with the purpose” of the rent control laws and the owner complies with the agency’s regulations regarding relocating tenants and furnishing appropriate stipends for that purpose (id., § 26-408 [b] [4] [a]-[d]). The Sound Housing Law adopted in 1974 (L 1974, ch 1022) also requires a landlord seeking to withdraw a rent-controlled unit from the marketplace to satisfy the agency that "there is no reasonable possibility that the landlord can make a net annual return of [816%]” (id., §26-408 [b] [5] [a]), and the landlord must obtain "prior written approval” by the agency if an existing tenant is to be evicted (id., § 26-408 [j] [1]).
The Rent Stabilization Code contains analogous rules requiring determinations by DHCR before a landlord may withdraw the protected apartment units from the market and demolish the building (9 NYCRR 2524.5 [a] [2]). Finally, both the New York City rent control law and the Rent Stabilization Code give DHCR the responsibility of adjudicating claimed violations of the rules prohibiting landlords from harassing tenants to induce them to leave their apartments (Administrative Code § 26-413 [b] [2]; § 26-412 [d]; § 26-516 [c]; see also, 9 NYCRR 2526.2 [c] [2]; id., part 2206). The harassment question is one that must also be considered by HPD, under the Special Clinton District Provisions of the City Zoning Resolution (NY City Zoning Resolution §§ 96-109, 96-110).
It is clear beyond question that the Legislature intended disputes over a landlord’s right to demolish a regulated build *766 ing to be adjudicated by the DHCR and, to a lesser extent, HPD. The question presented here, which in this instance is dispositive, is whether by virtue of its constitutional role as a court of general original jurisdiction, the Supreme Court has concurrent authority to adjudicate such disputes.
Article VI, § 7 of the NY Constitution establishes the Supreme Court as a court of "general original jurisdiction in law and equity” (NY Const, art VI, § 7 [a]). Under this grant of authority, the Supreme Court "is competent to entertain all causes of action unless its jurisdiction has been specifically proscribed” (Thrasher v United States Liab. Ins. Co., 19 NY2d 159, 166), and to that extent its powers are "unlimited and unqualified” (Kagen v Kagen, 21 NY2d 532, 537).
However, as all parties agree, rent-control and rent-stabilization disputes are a modern legislatively created category not encompassed within the traditional categories of actions at law and equity referred to in section 7 (a) of article VI of the NY Constitution (see generally, Langerman v Langerman, 303 NY 465). Thus, the Supreme Court’s authority in this case depends on the reach of section 7 (b) of article VI, which provides: "If the legislature shall create new classes of fictions and proceedings, the supreme court shall have jurisdiction over such classes of actions and proceedings,” even though "the legislature may provide that another court or courts shall also have jurisdiction and that actions and proceedings of such classes may be originated in such other court or courts.”
It has been held that the "new class of actions and proceedings” to which article VI, § 7 (b) specifically refers are those which were unknown at common law and therefore would otherwise be outside the general jurisdiction continued and preserved by section 7 (a) (Matter of Seitz v Drogheo, 21 NY2d 181; Kagen v Kagen, 21 NY2d 532, 536-537, supra). However, it has never been suggested that every claim or dispute arising under a legislatively created scheme may be brought to the Supreme Court for original adjudication. To the contrary, in Loretto v Teleprompter Manhattan CATV Corp. (58 NY2d 143, 152-153), this Court observed that concurrent original jurisdiction is not necessarily conferred on the Supreme Court when the Legislature provides for the adjudication of regulatory disputes by an administrative agency within the executive branch, as distinguished from a court within the judicial branch. Indeed, we stated in Loretto that there is *767 nothing in article VI, § 7 (b) or the relevant case law "to suggest that administrative agencies cannot be given a first instance adjudicatory function, subject to judicial review” (58 NY2d, at 153, supra; cf., Flacke v Onondaga Landfill Sys., 69 NY2d 355, 362-363 [Supreme Court does not have jurisdiction concurrent with that of Department of Environmental Conservation with respect to agency’s legislative licensing and regulatory functions]).
Accordingly, the constitutionally protected jurisdiction of the Supreme Court does not prohibit the Legislature from conferring exclusive original jurisdiction upon an agency in connection with the administration of a statutory regulatory program. In situations where the Legislature has made that choice, the Supreme Court’s power is limited to article 78 review, except where the applicability or constitutionality of the regulatory statute, or other like questions, are in issue (see, e.g., Seawall Assocs. v City of New York, 74 NY2d 92; 520 E. 81st St. Assocs. v Lenox Hill Hosp., 38 NY2d 525; Niagara Falls Power Co. v Halpin, 267 App Div 236, affd sub nom. Niagara Falls Power Co. v White, 292 NY 705).
The only issues raised by plaintiffs complaint were his satisfaction of the regulatory conditions for obtaining certificates of eviction and demolishing a structure containing protected apartment units. The earlier described provisions of the rent-control and rent-stabilization laws demonstrate that the Legislature intended DHCR and HPD to be the exclusive initial arbiters of whether an owner has, in fact, met these regulatory conditions. In addition to the many references to the need to establish the necessary facts to the agency’s satisfaction and the other references to determinations and findings by the agency (Administrative Code § 26-408 [b] [3], [4] [a] , [b], [d]; [5] [a], [b] [i]), the distinction drawn in the rent-control provisions between eviction proceedings that may be commenced immediately in court, without prior approval of the DHCR (Administrative Code § 26-408 [a]), and those that require agency-issued "certificate[s] of eviction” (id., § 26-408 [b] ) evinces a legislative intent to have issues arising in the latter class of cases determined, in the first instance, by the agency. Similarly, section 26-408 (f), which provides that orders granting a certificate of eviction "shall be subject to judicial review only in the manner prescribed by [State enabling act § 1 (8) (codified at McKinney’s Uncons Laws of NY § 8608) (mandating article 78 review)],” lends further support to the conclusion that the agency was intended to have *768 exclusive original jurisdiction over these controversies. That conclusion is also bolstered by the Legislature’s authorization to DHCR to continue the policies of its predecessor (the New York City Conciliation and Appeals Board) (L 1983, ch 403, §§ 19, 20), including its practice of adjudicating landlords’ applications for permission to demolish buildings subject to the rent-stabilization laws (see, former Code of Rent Stabilization Association of New York City, Inc. § 54 [D] [1]; see also, 9 NYCRR 2524.5 [a] [2]).
 Since concurrent Supreme Court jurisdiction was not contemplated in this situation and the Constitution does not require it (see, Loretto v Teleprompter Manhattan CATV Corp., 58 NY2d 143, 152-153, supra), Supreme Court erred in entertaining plaintiff’s claims on the merits. Furthermore, Supreme Court’s consideration of the delays that purportedly typify the administrative adjudicative process was inappropriate, since that factor, to the extent it might ever be relevant at all, would apply only in the application of the doctrine of "primary jurisdiction.” That doctrine, which represents an effort to "co-ordinate the relationship between courts and administrative agencies,” generally enjoins courts having concurrent jurisdiction to refrain from adjudicating disputes within an administrative agency’s authority, particularly where the agency’s specialized experience and technical expertise is involved (Capital Tel. Co. v Pattersonville Tel. Co., 56 NY2d 11, 22). While the rule is certainly not without exceptions, no such exception is possible where, as here, the agency’s original jurisdiction is exclusive (see, Flacke v Onondaga Landfill Sys., supra, at 362).
For all of the foregoing reasons, the Supreme Court should not have entertained plaintiff’s action for declaratory and related relief in connection with his efforts to demolish the building. Similarly, it should not have directed HPD to issue "no harassment” certificates on the basis of its own findings on the harassment issue or granted plaintiff’s application in the article 78 proceeding to enjoin DHCR’s inquiry into the tenants’ harassment charges, since in these circumstances the harassment issue is one for DHCR and HPD to resolve under their respective enabling provisions. Finally, the Supreme Court’s permanent injunction against the tenants’ and HPD’s efforts to remedy Housing Maintenance Code violations is untenable because it was premised on factual determinations that the Supreme Court had no authority to make. Rather than adjudicating the controversy, the Supreme Court *769 should have dismissed the complaint for lack of subject matter jurisdiction (see, Combustion Eng’g v Travelers Indem. Co., 53 NY2d 875; cf., Lanza v Wagner, 11 NY2d 317, 334; see also, 3 Weinstein-Korn-Miller, NY Civ Prac ¶¶ 3001.13, 3001.18) and dismissed the article 78 petition on the merits because it sought to enjoin a determination that was within DHCR’s exclusive province.
Accordingly, the order of the Appellate Division should be reversed, with costs, the complaint and petition dismissed and the certified question answered in the negative.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Hancock, Jr., and Bellacosa concur.
Order reversed, etc.

. An earlier article 78 application by plaintiff for a writ of prohibition, a stay of the DHCR proceedings and consolidation with the pending declaratory judgment action had been denied by Justice Greenfield. Justice Pecora, who presided in the declaratory judgment action and the second article 78 proceeding, concluded that this determination was not a bar to his own issuance of the less "drastic remedy” of a discretionary interim stay.

. See, L 1983, ch 403, §§ 22, 31.

. There is no minimum requirement for the number of additional units in the new structure if the landlord can show that "the cost of removing [existing health and safety] violations would be substantially equal to or would exceed the assessed valuation of the structure” (Administrative Code of City of New York § 26-408 [b] [4] [a]). In all other cases, the new building must contain at least 20% more unite. Other conditions for the issuance of a certificate of eviction for a planned demolition include the landlord’s having obtained the necessary approvals for the new construction and a determination by DHCR that the certificate would not be "inconsistent with the purposes” of the rent-control laws (id., § 26-408 [b] [4] [d]).