OPINION OF THE COURT
Douglas E. Hoffman, J.
In this summary licensee holdover proceeding, respondent Vance Jones, a mentally retarded man who states that he is the gay life partner of the deceased proprietary lessee of a cooperative apartment, moves pursuant to CPLR 2201 and CCA 212 for an order staying this proceeding pending a final determination of respondent’s related discrimination complaint before the New York City Commission on Human Rights (Commission).
PROCEDURAL HISTORY
Respondent Jones filed the discrimination complaint, No. M-H-D-97-1004253 (as amended), involving the parties herein, prior to the instant proceeding. Following the filing of the discrimination complaint, petitioner effected personal service of a notice to quit upon respondent Vance Jones on or about July 28, 1997. Thereafter, petitioner served respondent with a notice of petition and petition dated August 8, 1997, returnable in Part 18 on August 25, 1997. On August 26, 1997, the Honorable Saralee Evans signed an order to show cause submitted by the Commissioner of Social Services (Commissioner) directing the parties to show cause why the Commissioner should not be permitted leave to intervene for the purpose of seeking appointment of a guardian ad litem (GAL) on behalf of respondent. By order dated September 11, 1997, the Honorable Shirley Werner Kornreich granted the Commissioner’s motion, finding respondent to be mentally retarded and unable adequately to defend his rights in this proceeding. The court appointed Leonard Herbst as respondent’s GAL. On September 26, 1997, Mr. Herbst filed a consent to act in this capacity as required by CPLR 1202 (c). Thereafter, the GAL retained counsel on behalf of respondent served a verified answer on or about October 23, 1997.
FACTS
The parties asserted the following facts. Respondent claimed that he moved into the subject apartment, 170 West 85th Street, No. 1EF, New York, New York, in or about 1983 with his gay life partner, Richard Watts, the lessee of record. In or about 1989, the apartment building converted to cooperative *264 ownership and Mr. Watts purchased the shares to his apartment. On August 23, 1991, Mr. Watts died. At the time of his death, Mr. Watts and respondent had been together as a couple for approximately 16 years. During that time, Mr. Jones and Mr. Watts shared payment of household expenses, attended family functions together, and held themselves out to the community and society in general as life partners. Mr. Jones cared for Mr. Watts prior to his death, when Mr. Watts was suffering from AIDS.
On or about April 26, 1997, Joseph Malary, president of the cooperative corporation, the petitioner herein, commenced a proceeding in New York County Surrogate’s Court, seeking issuance of letters of administration concerning the estate of Richard Watts, the proprietary lessee of record for the subject apartment. The petition for administration listed Eunice Borden, the sister of Mr. Watts, as the sole distributee of the estate. The petition also named the Public Administrator of New York County, Ethel Griffin, as the only other party having an interest in the estate. On May 28, 1997, the Honorable Eve Preminger, Surrogate of New York County, issued a decree awarding letters of administration to the Public Administrator. On July 9, 1997, Ms. Griffin, acting as administratrix of the estate of Richard Watts, surrendered the shares of stock representing the subject apartment, and the proprietary lease, to the cooperative corporation. There is no indication that respondent Jones was aware of the pendency of any proceedings in Surrogate’s Court.
On May 30, 1997, Voncele Knight, a cousin of Mr. Jones, filed an initial complaint on Mr. Jones’ behalf with the New York City Commission on Human Rights, asserting that petitioner and certain employees of petitioner were, inter alia, harassing Mr. Jones and denying him equal terms and conditions of a housing accommodation. On or about October 27, 1997, Ms. Knight filed an amended complaint which expanded the original to include petitioner’s president, Joseph Malary, as a respondent and alleged discrimination by the cooperative corporation and its agents because of their failure to award succession rights for the cooperative apartment to Vance Jones on the basis of his disability, sexual orientation, and marital status, in violation of section 8-107 of the Administrative Code *265 of the City of New York.[1] Contending that complete relief could only be provided by the Commission, respondent’s representatives filed the instant motion for a stay pending a final Commission determination.
DISCUSSION
A court may stay its own proceedings in a proper case upon such terms as may be just. (CPLR 2201.) CCA 212 allows the civil court to exercise “all of the powers that the supreme court would have in like actions and proceedings.” These powers include the imposition of a stay. (Matter of MacLeod v Shapiro, 20 AD2d 424, 427 [1st Dept 1964]; Mountbatten Equities v Tabard Press Corp., 88 Misc 2d 831, 832 [App Term, 1st Dept 1976].) A motion to stay a proceeding is primarily addressed to the discretion of the court. (Pierre Assocs. v Citizens Cas. Co., 32 AD2d 495, 496 [1st Dept 1969].) When the parties in two concurrent actions are identical, and the issues to be resolved overlap, a court in the exercise of its discretion may grant a stay of one proceeding pursuant to CPLR 2201. (El Greco Inc. v Cohn, 139 AD2d 615, 616-617 [2d Dept 1988].) In El Greco, the Court enumerated factors to be weighed in determining whether a stay should be granted: “moreover, the record discloses that a more complete disposition of the parties’ respective contentions can be obtained in the earlier-commenced * * * action. Additionally, considering the similarity of the issues involved, the imposition of a stay further avoids the risk of inconsistent adjudications, duplication of proof, and the potential waste of judicial resources”. (Supra.)
Respondent’s discrimination complaint predates the instant proceeding, and the issues to be considered for determining the appropriateness of a stay, conform closely to the criteria set *266 forth in El Greco (supra). Respondent’s right to remain in possession of the subject apartment is at the heart of each proceeding. Moreover, the Commission, upon a finding of discrimination, can provide more comprehensive relief to an aggrieved party than can this court.[2] The interests of judicial economy require that cases be handled in whole rather than piecemeal fashion.
Civil Court has granted stays pending a determination by the New York City Commission on Human Rights in substantially similar situations. In Mora v Dibartolo (NYLJ, Feb. 8, 1995, at 27, col 2 [Civ Ct, NY County]) and Rutherford Tenants Corp. v Schmidt (NYLJ, Aug. 3, 1994, at 26, col 3 [Civ Ct, NY County]), the Civil Court stayed holdover proceedings pending determination of discrimination complaints filed with the Commission. (See also, Boca Broadway Realty Co. v Naim, NYLJ, June 8, 1995, at 31, col 5 [App Term, 1st Dept] [holdover proceeding by superintendent stayed pending determination of gender discrimination complaint against landlord by commission on Human Rights].) In Mora (supra), a case concerning discrimination against a gay life partner, the civil court recognized a public policy of the State and City of New York prohibiting discriminatory conduct in the leasing of housing accommodations. (Mora v Dibartolo, supra; see, Executive Law § 296 [5] [a]; Administrative Code § 8-107 [5] [a].) In Mora, the court stated: “[w]here a court has concurrent jurisdiction with an administrative agency to adjudicate a particular contro *267 versy, the doctrine of primary jurisdiction generally enjoins the court from deciding matters within the administrative agency’s jurisdiction, ‘particularly where the agency’s specialized experience and technical expertise is involved.’ ” (Mora v Dibartolo, NYLJ, Feb. 8, 1995, supra, at 27, col 4; see also, Sohn v Calderon, 78 NY2d 755, 768 [1991] [the doctrine of “primary jurisdiction” generally “enjoins courts having concurrent jurisdiction to refrain from adjudicating disputes within an administrative agency’s authority, particularly where the agency’s specialized experience and technical expertise is involved”]; Rutherford Tenants Corp. v Schmidt, supra.) The court noted further in Mora that, “The doctrine of primary jurisdiction is clearly applicable in summary proceedings. Where an administrative agency has ‘particular expertise’ in considering an issue, and [the] ‘ultimate disposition of the summary proceeding will necessarily hinge upon’ the agency’s findings, a stay of the summary proceeding pending a factual determination by the administrative agency is preferable.” (Mora v Dibartolo, NYLJ, Feb. 8, 1995, supra, at 27, col 4; Rutherford Tenants Corp. v Schmidt, supra; see also, Eli Haddad Corp. v Cal Redmond Studio, 102 AD2d 730 [1st Dept 1984] [“where there is an administrative agency which has the necessary expertise to dispose of an issue, in the exercise of discretion, resort to a judicial tribunal should be withheld pending resolution of the administrative proceeding”].)
The reasoning for this is simple but compelling. An Administrative Law Judge and the prosecutorial staff of the Commission are accustomed to these types of claims and possess more specialized knowledge of discrimination law than the Housing Part of the Civil Court. (Rutherford Tenants Corp. v Schmidt, NYLJ, Aug. 3, 1994, at 26, col 3, supra.) While Civil Court may properly consider respondent’s discrimination claim as a defense to petitioner’s claim, the court’s equitable jurisdiction is limited. (Supra.) “In contrast, the City of New York Commission on Human Rights has been vested with the authority [to] order broad equitable remedies upon a finding of discrimination. The Commission may require affirmative action of a party, including extension of ‘full, equal and unsegregated accommodations,’ and may seek injunctive relief and impose civil penalties.” (Supra, at 26, col 4; see also, Marine Midland Bank v New York State Div. of Human Rights, 75 NY2d 240, 244 [1989] [“administrative forum offers a complainant remedies not available from a court”].)
In determining the appropriateness of granting a stay where a discrimination complaint implicates the subject living accom *268 modation, the Appellate Term, First Department, has stated that the court must consider whether petitioner can establish an independent, nondiscriminatory basis for seeking possession of the subject apartment. (Ennismore Apts. v Gottlieb, NYLJ, Sept. 24,1992, at 24, col 5 [App Term, 1st Dept].) Where such an independent basis exists, a stay may not be appropriate, and petitioner may prosecute the summary proceeding. (Supra.) Any subsequent determination in the administrative proceeding would result in all the relief to which respondent may be entitled. (Supra; cf., Boca Broadway Realty Co. v Naim, NYLJ, June 8, 1995, at 31, col 5 [App Term, 1st Dept], supra.)
In Ennismore (supra), the respondents were legal subtenants of a rent-stabilized lessee. Respondents held over after the expiration of their sublease. When the prime tenant expressed no interest in returning to the subject apartment, the subtenants requested a lease in their own names. The petitioner’s officer allegedly made disparaging remarks about homosexuals, indicating that he did not wish to allow such people to reside in the building. The respondents filed a housing discrimination complaint with the New York City Commission on Human Rights and the Housing Court issued an order staying its holdover proceeding pending a determination of that complaint. The Appellate Term reversed the order and held that such a case was not appropriate for a stay because the subtenants had no legal basis to remain in the subject apartment after the expiration of their term and petitioner did not consent to a further sublease. Respondents’ holding over after the expiration of their sublease, therefore, represented an adequate nondiscriminatory basis upon which to prosecute the holdover proceeding. The Appellate Term held further that the Commission was empowered to grant adequate relief in the event that respondents’ discrimination complaint was ultimately sustained. (Ennismore Apts. v Gottlieb, supra.)
The instant case is distinguishable from Ennismore (supra). If respondent’s allegations are true, respondent would not be a licensee and would have a substantive legal basis to remain in the apartment. The only basis for eviction would be discriminatory and petitioner would have no colorable cause of action in the holdover proceeding.
In addition to respondent’s claim pursuant to the Human Rights Laws, respondent has made a showing of a claim pursuant to the proprietary lease. The proprietary lease to the subject apartment provides, at paragraph 5.05 (b) (ii) (B), that neither the directors nor the shareholders may “unreasonably *269 withhold consent to assignment of the lease and a transfer of the Shares to a financially responsible member of the Shareholder’s family (other than the Shareholder’s spouse, as to whom no consent is required) who shall have accepted all the terms and conditions of this lease.” (Emphasis added.) The lease provides further, at paragraph 3.02 (f), that “[n]either the Corporation nor the Shareholder will discriminate against any person because of his or her race, creed, religion, color, national origin, age, sex, sexual orientation or affectional preference, or other ground prohibited by law when exercising any right under this lease.” These two paragraphs, read in pari materia, would allow respondent to claim succession rights to the subject apartment pursuant to a more comprehensive definition of family member (see, Braschi v Stahl Assocs. Co., 74 NY2d 201 [1989]), and would negate petitioner’s assertion that respondent is a licensee whose license had expired, thereby vitiating any independent nondiscriminatory grounds which petitioner could have asserted to obtain possession of the subject apartment. Although Braschi did not address proprietary leases such as that in the instant case, the proprietary lease itself appears to incorporate the criteria set forth in Braschi in regard to the inclusive definition of family member.
Furthermore, the Commission has utilized the more comprehensive definition of family in determining that a co-op board acted in a discriminatory fashion by refusing to approve the transfer of shares pursuant to a bequest from a complainant’s gay life partner, while a similarly situated surviving spouse obtained such a right of transfer under the terms of the proprietary lease. (Kirkpatrick v 60 Sutton Corp., New York City Commn on Human Rights complaint No. FH 164032991 DN, recommended decision and order, at 32 [Oct. 30, 1992], affd as modified decision and order [Dec. 21, 1992].) In Kirkpatrick, the Commission stated: “[A]s a matter of law, the refusal to transfer the shares and a proprietary lease to a cooperative apartment to the surviving partner of a domestic partnership would be violative of the non-discrimination provisions of the City’s Human Rights Law, if a similarly situated surviving married spouse would have the right to such a transfer under the terms of the cooperative agreement.” (Supra, at 29.) The instant case differs from Kirkpatrick in that Mr. Jones’ alleged gay life partner died intestate, and therefore did not bequeath his shares to Mr. Jones. However, this factor is not significant since the Commission points out that for married couples the right of transfer inures to the surviving spouse under the terms *270 of the proprietary lease. The Commission makes no mention of the need for a specific testamentary bequest of the shares by a deceased spouse before the co-op board must give effect to the transfer provisions of the proprietary lease.[3] As noted infra, the Civil Court does not have the Commission’s power to order transfer of the proprietary lease and the shares appurtenant thereto. Thus, a stay of this eviction proceeding pending the Commission’s determination would not only prevent inconsistent adjudications with regard to the pending matters but would permit the agency with detailed expertise in this matter to afford both parties comprehensive relief.
Petitioner should not be unduly prejudiced by the imposition of a stay. Petitioner has already waited several years following Mr. Watts’ death to commence this proceeding. The court expects the Commission, as the Division of Housing and Community Renewal does, to expedite a complaint upon request by this court. Accordingly, respondent has met his burden of demonstrating that a stay of the instant proceeding is appropriate pending the outcome of the discrimination complaint filed with the New York City Commission on Human Rights. The stay shall, however, be conditioned upon the payment of all past due use and occupancy as well as future use and occupancy as it becomes due. The court will conduct a hearing to determine the amount of use and occupancy to be paid during the stay. The parties shall appear in Part T, room 823, on March 23, 1998 at 9:30 a.m. for this purpose. Furthermore, petitioner may move to vacate this stay if the Human Rights Commission has not reached its decision by the end of the calendar year. The New York City Human Rights Commission is respectfully requested to expedite its determination in this matter, and this court shall forward a copy of its decision/order to the Human Rights Commission, Law Enforcement Bureau, 40 Rector Street, New York, New York 10006.
[Portions of opinion omitted for purposes of publication.]

. Administrative Code § 8-107 (5) (a) (1) provides that, with regard to housing accommodations, it shall be an unlawful discriminatory practice to “refuse to sell, rent, lease, approve the sale, rental or lease or otherwise deny to or withhold from any person or group of persons such a housing accommodation or an interest therein because of the actual or perceived race, creed, color, national origin, gender, age, disability, sexual orientation, marital status or alienage or citizenship status of such person or persons, or because children are, may be or would be residing with such person or persons.” Section 8-107 (5) (a) (2) makes it unlawful to “discriminate against any person because of such person’s actual or perceived race, creed, color, national origin, gender, age, disability, sexual orientation, marital status or alienage or citizenship status, or because children are, may be or would be residing with such person, in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or an interest therein or in the furnishing of facilities or services in connection therewith.”

. Where the Commission makes a finding that an unlawful discriminatory practice has occurred, a cease and desist order shall issue. (Administrative Code § 8-120.) In addition, the Commission may order the offending party,
“to take such affirmative action as, in the judgment of the commission, will effectuate the purposes of this chapter including, but not limited to * * *
“(5) the extension of full, equal and unsegregated accommodations, advantages, facilities and privileges * * *
“(7) selling, renting or leasing, or approving the sale, rental or lease of housing accommodations, land or commercial space or an interest therein, or the provision of credit with respect thereto, without unlawful discrimination;
“(8) payment of compensatory damages to the person aggrieved by such practice or act; and
“(9) submission of reports with respect to the manner of compliance.” (Administrative Code § 8-120.)
The Commission can, therefore, make a determination which encompasses all the relief to which a complainant may be entitled, including money damages and injunctive relief. The Commission may also order that a proprietary lease be offered to the complaining party.

. If respondent Jones can show that discriminatory conduct occurred with regard to his rights to the proprietary lease, the Commission’s decision in Kirkpatrick (supra) suggests that respondent has a strong likelihood of success on the merits of his discrimination complaint. However, by its terms, CPLR 2201 does not expressly require a showing of a likelihood of success in a concurrent proceeding when determining whether a stay is appropriate. CPLR 2201 gives a court discretion in determining the criteria and conditions for the imposition of a stay. (See also, Pierre Assocs. v Citizens Cas. Co., 32 AD2d 495, supra.)