OPINION OF THE COURT
Sabrina B. Kraus, J.
Background
This summary holdover proceeding was commenced by Golden Mountain Realty Inc. (petitioner) against Abraham Severino (respondent), seeking to recover possession of 202 Mott Street, apartment 17, New York, New York 10012 (subject premises) based on the allegation that respondent was a licensee whose right to possession had terminated with the death of Antonia M. Bido, a former tenant of record, or a subtenant no longer entitled to possession.
Procedural History
Petitioner issued a 10-day notice to quit dated May 9, 2011. The notice was to respondent and Manuel Severino, respondent’s father, who died on April 28, 2011. The notice sets forth the basis for the termination:
“The reason is that you are in possession of the premises as a licensee and/or subtenant of Antonia M. Bido, who was the tenant of the premises at the time the licensee and/or sublease was made, that Antonia M. Bido is deceased, and that your continued possession of the premises is without the permission of the landlord.”
The notice required that respondent and his father vacate on or before May 27, 2011.
The petition is dated June 20, 2011 and only names respondent. The petition asserts that respondent entered into possession of the subject premises as a licensee with the permission of Antonia M. Bido, the tenant of record at the time respondent entered possession. The petition asserts there is no landlord-tenant relationship between petitioner and respondent, and that the tenancy of Antonia M. Bido terminated by her death. The petition asserts that the subject premises is subject to the rent control law and has been duly registered with the Division of Housing and Community Renewal (DHCR).
*348 The proceeding was originally returnable in Part D on July 6, 2011, and was adjourned to August 4, 2011 at respondent’s request. On August 4, 2011, respondent appeared by counsel, and the proceeding was adjourned to September 13, 2011. Respondent’s time to answer was extended through August 19, 2011. Respondent’s answer asserts 19 affirmative defenses and 11 counterclaims.[1] Included in the defenses are: respondent’s claim of estoppel and waiver based on petitioner’s accepted rent from respondent’s father for 22 years; and that respondent is entitled to succession rights to the subject premises. Succession is only asserted as an affirmative defense not as a counterclaim.
Respondent’s answer asserts that he has resided in the subject premises since about 2005, when he moved in with his father, who resided in the subject premises since approximately 1968. The answer asserts that respondent’s father moved into the subject premises with Antonia Bido, and that they were married at the time they moved in.
On September 13, 2011, the proceeding was transferred to Part X. On January 9, 2012, the proceeding was assigned to Part R for trial. The trial commenced and concluded on January 9, 2012. The parties submitted post-trial memos on January 20, 2012, and the court reserved decision.
Prior Litigation
On April 21, 2011, an illegal lockout proceeding was commenced by respondent and his father, in reference to the subject premises under index No. 64998/2011 and was returnable on April 27, 2011.[2] The petition asserted there was a fire in the subject premises on March 3, 2011, and that since that date petitioner had not allowed respondent and his father access to the subject premises. The petition further asserted that a notice of eviction was posted regarding the subject premises on April 20, 2011.
Petitioner, represented by the same counsel as in the underlying proceeding, filed opposition papers to respondent’s motion. As a result of the fire, Housing Preservation and Development issued a partial vacate order, which covered the subject premises. Petitioner asserted that respondent had contacted *349 management, after the fire, to request a letter confirming his occupancy and this led to petitioner’s discovery that Antonia Bido was not occupying the subject premises.
Petitioner then issued a 30-day notice to vacate to Antonia Bido based on nonprimary residence. The notice was dated April 13, 2011 and provided in pertinent part:
“The bases of the landlord’s belief that you are not occupying the premises as your primary residence are:
“(a) that you are unknown to the landlord and have never been seen in the premises by the landlord;
“(b) that your rent is paid by money orders bearing your name but always tendered by others;
“(c) that the premises are occupied by Herman Severino and others;
“(d) that the apartment was damaged by a fire and the occupants requested a letter from the landlord identifying a person other than you to be the legal tenant;
“(e) that a request to the occupants for information regarding your residency and familial relationship to the occupants was unanswered.”
Respondent commenced the lockout proceeding in response to said notice. On April 27, 2011 the proceeding was dismissed by the court (Spears, J.) who noted on the file the basis of the dismissal as “because the premises was closed due to a fire.”
Trial
Petitioner purchased the subject building in 1984 (exhibit 1 is the certified deed). Mr. Lee is the registered managing agent for the building, and has been collecting rent for the building since 1984. Mr. Lee goes to the building at least once a week. When Mr. Lee is not available to collect the rents, someone else does, and provides the collected rents to him. Mr. Lee has personal knowledge of all rent payments made since 1984. Mr. Lee testified that through 2011, rent for the subject premises was paid by money order, which was generally slipped under the door to apartment 5 in the building. Apartment 5 is used by petitioner as an office in the building. The name on the money orders submitted was Antonia M. Bido. The last money order petitioner received in the name of Antonia Bido was in February 2011.
In 1984, Antonia Bido was registered as the tenant of record for the subject premises at a rent of $72.60 per month (certified *350 DHCR record, exhibit 3). In approximately 1985 or 1986, Mr. Lee attempted unsuccessfully to learn the identity of the tenants in the subject premises; no further attempts were made after this date. The parties stipulated that Antonia Bido died in 1989. Antonia Bido died in the Dominican Republic.
There was a fire in the building on or about March 2, 2011, which damaged many apartments, and resulted in a vacate order being issued for four apartments in the building, including the subject premises. Petitioner is in the process of repairing the apartments damaged by the fire, and acknowledged that an HP proceeding had been instituted regarding the repairs on these units. As of the time of the trial the four damaged apartments, including the subject premises, were not habitable and not occupied. After Mr. Lee’s testimony petitioner rested.
Respondent was born in 1948. Respondent lived in the subject premises with his parents and brother from 1968 until 1972, when he married and moved out. Respondent later moved to an apartment at 239 Mulberry Street where he lived for approximately 30 years. The apartment on Mulberry Street is located about one block from the subject premises, which enabled respondent to visit his parents daily. Respondent worked for Macy’s for 30 years as a cook, and speaks only a little English. Respondent had an accident in 1995, and after that date stopped working and received disability benefits.
Respondent moved back into the subject premises in 2005, after his divorce was finalized (judgment of divorce, exhibit D).
Respondent’s parents were born in the Dominican Republic and did not speak English. Antonia Bido and Manuel Severino were married (marriage certificate for Manuel Severino and Mercedes Bido, exhibit C) and moved into the subject premises in 1968. Respondent’s mother spent three to four months a year in the Dominican Republic, and was never there for longer than six months at a time. Respondent’s parents would travel annually to the Dominican Republic, with his mother leaving earlier in the year, and his parents returning to New York together.
From 1987 to 1989 respondent’s parents lived in the subject premises with his two brothers and a cousin, Jose Luna. Respondent testified that Jose Luna lived in the subject premises for four or five years.
Respondent is not currently in occupancy of the subject premises, and has been living with his daughter since the fire *351 rendering the subject premises uninhabitable. Prior to the fire, in March 2011, respondent and his father were living together at the subject premises. Respondent’s father died on April 28, 2011 at the age of 99.
Respondent and his father paid the rent by money orders which were filled out by respondent’s sister-in-law. Respondent paid half the rent, and the money orders were made in the name of Antonia Bido.
Documents put into evidence by respondent to establish residency include: a notice from Department of Homeland Security dated January 17, 2008 (exhibit F); judgment of divorce dated December 30, 2005 (exhibit D); a document dated June 18, 2007 from the Social Security Administration regarding disability insurance benefits (exhibit E); a document from Human Resources Administration dated October 11, 2006 (exhibit H). Respondent has no driver’s license. Respondent maintains a bank account, and his Social Security checks are deposited into that account. The last time respondent filed income taxes was in 1995.
Respondent’s daughters Amy and Vanessa Severino testified that respondent has lived in the subject premises for the past six or seven years and that they visit him there regularly and spent special occasions with respondent and Manuel Severino. Amy Severino testified that her uncle Herman Severino also lived in the subject premises from 1987 to 1989.
Petitioner’s first rebuttal witness was Zola Farquharson. Ms. Farquharson is employed by Con Edison as a customer service representative. Con Edison records for the subject premises were produced and put into evidence (exhibits 7a-c). The records produced only dated back to 2004, because Con Edison only maintains records for six years. The name on the account through March 3, 2011 is Manuel V Severino. All records are in the same name. The account was first opened under that name on September 16, 2003. The name of the prior account holder was not available to Ms. Farquharson. The turn on date for the account is listed as September 16, 2003.
There was little to no conclusive evidence offered as to the identity of the occupants of the apartment from the death of Antonia Bido in 1989 to the time when respondent moved back in 2005. Nor is there conclusive evidence as to how long Antonia Bido had been in the Dominican Republic prior to her death. Other than the Con Edison account opened in 2003 by Manuel Severino, there is no documentary evidence showing that Man *352 uel Severino maintained his primary residence at the subject premises from 1989 to the time of his death. There is the testimony of relatives that he lived there. However there is also testimony that other relatives lived in the premises at different time periods. Manuel Severino was in occupancy at the time of the fire and the order to vacate and died shortly thereafter.
Discussion
The petition asserts that the remaining family members of a deceased rent control tenant are subject to eviction through summary proceedings without any notification to or permission from DHCR. The petition cites no provision of the rent control law which allows for such an eviction. In fact, the statute provides that a landlord must obtain a certificate of eviction from DHCR prior to the commencement of a summary proceeding.
New York City Rent and Eviction Regulations (9 NYCRR) § 2204.1 (a) provides in pertinent part:
“No tenant, so long as he continues to pay the rent to which the landlord is entitled, shall be removed from any housing accommodation by action to evict or to recover possession . . . nor shall any person attempt such removal or exclusion from possession, notwithstanding that the tenant has no lease or that his lease, or other rental agreement, has expired or otherwise terminated, and notwithstanding any contract, lease agreement or obligation heretofore or hereafter entered into which provides for surrender of possession, or which otherwise provides contrary hereto, except one or more of the grounds specified in section 2204.2 of this Part, or unless the landlord has obtained a certificate of eviction as hereinafter provided.”
9 NYCRR 2200.2 (o) defines “Tenant” as “A tenant, subtenant, lessee, sublessee or other person entitled to the possession or to the use or occupancy of any housing accommodation.” This is an extremely broad definition of tenant and clearly extends to include occupants of the apartment, beyond the tenant of record.
This broad definition of tenant has been recognized by the courts. In Matter of Duell v Condon (84 NY2d 773 [1995]) the Court of Appeals held:
“Within the New York City rent stabilization scheme, the term ‘tenant’ is narrowly defined to *353 include only a ‘person or persons named on a lease as lessee or lessees, or who is or are a party or parties to a rental agreement’ (9 NYCRR 2520.6 [d]). . . . (R)ent control law broadly defines‘tenant’ as any person who is entitled to possession, use or occupancy of the premises (Administrative Code § 26-403 [m])” {id. at 781-782).
9 NYCRR 2204.2 (a) (1) through (7) provide for eviction without a certificate for breach of substantial obligation of tenancy, nuisance, illegal occupancy as evinced by violations, use of premises for an illegal or immoral purpose, failure to renew or by an owner of a cooperative or condominium pursuant to an eviction plan. No such cause of action is asserted in the petition herein.
Absent coming within one of these categories a landlord of a rent-controlled unit must obtain a certificate of eviction from DHCR before bringing a case in housing court for an eviction. Thus 9 NYCRR 2204.4 (a) provides that
“[n]o tenant who continues to pay the rent to which landlord is entitled shall be removed or evicted on grounds other than those stated in section 2204.2 of this Part, unless on application of the landlord . . . the administrator shall issue a certificate permitting the landlord to pursue his remedies at law at the expiration of the applicable waiting period specified in subdivision (b) of this section. The administrator shall issue an order granting a certificate if the removal or eviction meets the requirements of section 2204.5, 2204.6, 2204.7, 2204.8 or 2204.9 of this Part. The administrator may also issue orders granting certificates in other cases if the requested removal or eviction is not inconsistent with the purposes of the Rent Law or these regulations, and would not be likely to result in the circumvention or evasion thereof, and may impose such terms and conditions ... as the administrator may determine to be necessary or appropriate.”
The grounds applicable to the proceeding before this court come under 9 NYCRR 2204.6 (a) which provides:
“A certificate shall be issued for the eviction of the tenant and subtenants where the landlord seeks in good faith to recover possession of housing accommodations for which the tenant’s lease or other *354 rental agreement has expired or otherwise terminated, and at the time of termination the occupants of the housing accommodation are subtenants or other persons who occupied under a rental agreement with the tenant, and no part of the accommodations is used by the tenant as his dwelling.”
9 NYCRR 2204.6 (d) specifically precludes the agency from issuing a certificate of eviction against family members entitled to succession by virtue of having lived with the tenant from the inception of the tenancy or the applicable qualifying period.
In Braschi v Stahl Assoc. Co. (74 NY2d 201 [1989]) the Court of Appeals held that “since rent-control laws are remedial in nature and designed to promote the public good, their provisions should be interpreted broadly to effectuate their purposes” (id. at 208). Specifically in reference to 9 NYCRR 2204.6 (d) the Court held that “[t]he manifest intent of this section is to restrict the landowners’ ability to evict a narrow class of occupants other than the tenant of record” (id. at 209).
Following these guidelines it would seem reasonable to hold that the statute means what it says when it states that no eviction of a “tenant” may take place without a certificate of eviction being issued unless it is pursuant to a basis provided in 9 NYCRR 2204.2 (9 NYCRR 2204.4 [a]). Given that the clear intent of the statute is to protect family members from a sudden eviction after the death of a tenant of record, there is no basis to conclude that a landlord can ignore such language or that the legislature intended these family members to be subject to a quicker process of eviction through a summary proceeding based only on the issuance of a notice to quit under RPAPL 713.
The requirement that a landlord first obtain a certificate of eviction in circumstances such as the case at bar was noted by the Appellate Division in Matter of Herzog v Joy (74 AD2d 372 [1980], affd 53 NY2d 821 [1981]) in a decision affirmed by the Court of Appeals. In Herzog the original tenant of the rent-controlled apartment took occupancy in 1967, and her sister moved into the apartment in 1972; a year later the original tenant moved out. The landlord applied to the agency for an order of decontrol based on the original tenant’s failure to maintain the apartment as her primary residence. The agency denied the landlord’s application finding that the sister was the “tenant” in possession. The Court relied upon former section 56 (a) of the City Rent Regulations which contained nearly identical language to the amended provision found in 2204.6 (a).
*355 The Court noted in its decision the broad scope of the definition of “tenant” under rent control. The Court noted that the Supreme Court had erred in the CPLR article 78 proceeding in finding the remaining sister did not qualify as a tenant because she did not pay rent to her sister or the landlord . Most significantly, the Appellate Division noted that the City Rent Regulations “mandate[ ] the issuance of a certificate of eviction” (id. at 375) for the landlord to recover possession (see also Birch v Lynch, 154 NYS2d 333 [App Term, 1st Dept 1956] [statute required a certificate of eviction be issued prior to commencement of summary proceedings]; Fisher v Velasquez, 126 Misc 2d 24 [Civ Ct, Kings County 1984] [certificate of eviction is petitioner’s jurisdictional prerequisite for commencing a summary holdover proceeding and a necessary element to obtaining a final judgment of possession]; Stephen Estates, Inc. v Kaplan, 198 Misc 948 [1950] [certificate of eviction was necessary prerequisite to eviction proceeding]; Washington Green Apts. v Busalacchi, 11 AD2d 1007 [1st Dept 1960] [where housing accommodation was subject to rent control court had no jurisdiction to order eviction in absence of certificate of eviction]).
There is authority that holds that courts and DHCR have concurrent jurisdiction to determine succession claims to rent control tenancies. However these cases, like Braschi v Stahl Assoc. Co. and Misthopoulos v Estate of Ruhl (183 AD2d 651 [1992]), were originally cases commenced in Supreme Court seeking declaratory relief (see also Greenberg v Coronet Props. Co., 167 AD2d 291 [1990] [declaratory judgment action commenced seeking to evict daughter from deceased mother’s rent-controlled apartment]). For example, in Misthopoulos v Estate of Ruhl the Appellate Division held that DHCR and courts have concurrent jurisdiction to determine succession rights to a rent-controlled apartment. In Ruhl, the owner had commenced a declaratory judgment action in Supreme Court seeking a declaration that the apartment was no longer subject to rent control and directing DHCR to issue a certificate of eviction against the occupants. The Court citing 9 NYCRR 2204.4 held that DHCR could only issue a certificate of eviction “upon application made to the agency by the landlord,” but also held that both the agency and the courts had concurrent jurisdiction to determine succession rights
While Supreme Court has jurisdiction to entertain declaratory judgment actions, housing court lacks such jurisdiction.
There is some conflicting authority on the necessity of obtaining a certificate of eviction in the lower court and in some cases *356 from the Appellate Term. For example, in Bromer v Rosensweig (166 Misc 2d 201 [1995]) the Appellate Term reversed the sua sponte dismissal of a licensee holdover petition, prior to a trial or even the submission of an answer by respondent. While the procedural posture of Bromer is very different from the case at bar, the sua sponte dismissal was based on the landlord’s failure to have obtained a certificate of eviction from DHCR prior to the commencement of the proceeding.
The Bromer court in analyzing the applicable statute and regulations held “it is doubtful that the Legislature intended for disputes over succession to be vested exclusively with DHCR” (id. at 203). The court further held requiring a landlord to obtain a certificate of eviction “would necessarily relegate all succession claims where the rent-controlled tenant has permanently vacated to the more protracted processes of the administrative agency, effectively negating the summary remedy available under RPAPL 713” (id. at 202). However in Braschi regarding the same provisions the Court held “a court’s role is not to delve into the minds of legislators, but rather to effectuate the statute by carrying out the purpose of the statute as it is embodied in the words chosen by the Legislature” (Braschi at 208). The court’s conclusion in Bromer presupposes that the legislature intended a remaining family member to be subject to a quick eviction based on a notice to quit, rather than require a landlord to take a slower approach by applying to DHCR for a certificate of eviction, and is difficult to reconcile with holdings of the Court of Appeals, such as in Braschi, that 9 NYCRR 2204.6 was intended to protect remaining family members from sudden eviction after the death of the tenant of record.
In fact, the Bromer decision itself notes the conflicting authority by citing to Sohn v Calderon (78 NY2d 755 [1991]). In Sohn v Calderon, the Court of Appeals held a certificate of eviction must be obtained prior to the commencement of summary proceedings. Specifically the Court of Appeals held *357 Sohn described the requirement to obtain a certificate of eviction as “a condition precedent to an owner’s regaining possession of rent-controlled premises” based on the statute (id. at 762).
*356 “the distinction drawn in the rent-control provisions between eviction proceedings that may be commenced immediately in court, without prior approval of the DHCR, and those that require agency-issued ‘certificate[s] of eviction’ evinces a legislative intent to have issues arising in the latter class of cases determined, in the first instance, by the agency” (id. at 767).
*357 The Bromer court held that it did not construe 9 NYCRR 2204.6 (d) (1) “as precluding a court of competent jurisdiction, such as the Civil Court, from adjudicating these claims in the first instance when a holdover proceeding has been brought” (Bromer at 203). Justice Kristin Booth Glen issued a dissenting opinion in Bromer. In her dissent Justice Glen notes that “[t]he death of a rent-controlled tenant does not . . . automatically authorize a landlord to commence licensee holdover proceedings against alleged remaining family members” (id. at 204). Citing the specific statutory language referenced above broadly defining “tenant” under the rent control statute and requiring that a certificate of eviction be obtained as well as the holdings of Herzog v Joy and Sohn v Calderon, Justice Glen concluded that a certificate of eviction was a necessary prerequisite, where the landlord sought to evict family members remaining in occupancy after the death of a tenant of record.
Given the conflicting authority discussed above this court finds the holdings of Sohn v Calderon and Herzog v Joy are more directly on point and the applicable controlling precedent.
There is additional legal authority supporting a holding that remaining family members of rent control tenants were not intended to be subject to immediate eviction as licensees. The term “licensee” is not defined by New York statute, but has generally been accepted under common law as referring to a nonexclusive use and occupancy of a premises by permission of one entitled to possession. However, it has also been held that RPAPL 713 (7) is not applicable to “those who can claim an ‘opt-out’ status by virtue of inclusion in a legislative vehicle which grants them greater rights than those of a licensee” (Drost v Hookey, 25 Misc 3d 210, 216 [2009]; see also Piotrowski v Little, 30 Misc 3d 609 [2010]; Bistany v Williams, 83 Misc 2d 228 [1975] [family member remaining in occupancy after the death of the tenant of record has a protected status and is not subject to eviction by merely serving a notice to quit]). The definition of tenant under 9 NYCRR 2200.2 (o) is clearly a provision granting the remaining family members of a deceased rent control tenant of record greater rights than those of a mere licensee, even if that “tenant” does not ultimately qualify for succession under section 2204.6 (d). As such the provisions of RPAPL 713 (7) do not apply to one who qualifies as a “tenant” as defined by 9 NYCRR 2200.2 (o).
*358 To claim that the remaining family members of a deceased tenant of record of a rent-controlled apartment are mere licensees is a fiction. It seems that petitioner is attempting to use the fictional claim of an expired license as a guise to permit this court to issue a declaratory judgment as to whether or not respondent is entitled to succession rights.[3] However, petitioner must first establish a prima facie case or a cause of action, before the court can consider the affirmative defense of succession.
In this case, the court finds that petitioner has failed to prove its prima facie case and has failed to prove a cause of action. The predicate notice asserts that respondent and his father are either licensees of Antonia Bido or subtenants. If respondent is a subtenant then 9 NYCRR 2204.6 (a) clearly requires that petitioner obtain a certificate of eviction from DHCR prior to commencement of this proceeding. Moreover, it is clear that respondent is not the licensee of Antonia Bido given that Antonia Bido died in 1989, and respondent most recently commenced living in the subject premises in 2005.
The allegations in the April 13, 2011 30-day notice issued prior to this proceeding, before petitioner learned that Antonia Bido had deceased, indicate that petitioner knew that Antonia Bido was not in occupancy of the subject premises, and that the money orders submitted for payment of rent, while in her name, were “always tendered by others.”
Finally, this court holds that the husband and son of a deceased tenant of record in a rent-controlled apartment are not “licensees” subject to eviction under RPAPL 713 and that the applicable rent control regulations require petitioner to obtain a certificate of eviction from DHCR prior to the commencement of summary proceedings.
Given that petitioner failed to prove a prima facie case and respondent has only asserted succession as an affirmative defense and not as a counterclaim, the court does not reach the issue of whether respondent is entitled to succession rights. Respondent may, if so advised, apply to DHCR for a determination on this issue.
Based on the forgoing, the petition is dismissed.

. Although the issue of service is raised in the answer, the file indicates that respondent waived traverse as to the predicate notice and petition on September 13, 2011.

. The court has requisitioned the file from said proceeding and takes judicial notice of the contents of said file.

. In its post-trial memorandum of law, petitioner only addresses whether respondent has established the right to succession and does not address at all the law or evidence as it relates to petitioner’s prima facie case.